## 17271

ELIZABETH MILLER RIKARD and ANN RUTH LESTER, in behalf of themselves and all other persons in like plight, Appellants, v. HASELL HALL MILLER, individually, and as Executrix of the Estate of James Alonzo Miller, deceased, Respondent.

(97 S. E. (2d) 257)

*Messrs. Stoney & Crosland* and *James B. Heyward,* of Charleston, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent,*

*Messrs. Stoney & Crosland, George E. Campsen, Jr.* and *James B. Heyward,* of Charleston, *for Appellants,*

March 13, 1957.

Moss, Justice.

This action is brought for the purpose of having the Court construe the meaning, intent and effect of the will of James Alonzo Miller, who died on December 22, 1954, leaving in full force and effect his will dated December 17, 1953. Such action is authorized by Section 10-2003 of the 1952 Code of Laws of South Carolina.

The testator, after providing for the payment of his debts, disposed of his estate as follows:

"Item II: I give and bequeath to my grandson James Bruce Miller, son of my deceased son Adley Bruce Miller, the sum of Five Hundred ($500.00) Dollars.

"Item III : I give, devise and bequeath to my beloved wife Hasell Hall Miller, my residence now designated as 1318 Madison Avenue, Florence, South Carolina; whatever automobile for personal use I have at the time of my death, together with any monies and all personal property left after payment of the specific legacies and bequests herein and all my debts.

"Item IV : I give and bequeath my business called 'Miller's Termite Control', including trucks, equipment, stock and good will (or under any other name which may be hereafter adopted) to be equally divided among my children living at the time of my death, and among the child or children of any deceased child of mine, other than my grandson James Bruce Miller, such child or children to take the share of the deceased parent. In case there are no monies left in my estate at the time of my death, my automobile and other personal property hereinabove bequeathed to my wife shall be sold for the payment of my debts and the legacy to James Bruce Miller, the business called 'Miller's Termite Control' not to be subject to the payment of my debts and legacies in the remaining items of the within will, until other personal property has been exhausted."

The testator was twice married. At the time of his death there were living two daughters by the first marriage, Elizabeth Miller Rikard and Ann Ruth Lester, and seven children of a predeceased son, who are the appellants. The testator's second wife, Hasell Hall Miller, by whom he had no children, is the person mentioned in Item 3 of said will, and is the respondent herein.

Approximately three months prior to his death, the testator sold the business referred to in Item 4 of said will as "Miller's Termite Control" for the sum of $25,000.00; $4,-000.00 of the purchase price was paid to the testator in cash at the time of the sale, and the balance of $21,000.00 is now a part of his estate and is represented by a promissory note and chattel mortgage on the business. The appellants contend that the will of the late James Alonzo Miller, construed

in its entirety, shows clearly that he did not intend to disinherit them and that by reason of a sale of Miller's Termite Control that an ademption has not taken place, but if the Court rules that an ademption has taken place, then the proceeds of the sale of the business passes as intestate property and is to be distributed as such.

The respondent contends that the bequest contained in Item 4 of said will has been adeemed by the sale of said business by the testator, in his lifetime, and that the appellants took nothing under this Item of the will. The respondent also contends that by virtue of the language used by the testator in Item 3 of his said will that she takes the cash received from said sale and also the note and chattel mortgage representing the balance of the purchase price.

The legal issues involved in this case were argued before the Honorable G. Badger Baker, Resident Judge of the Twelfth Circuit, and by his Order dated April 23, 1956, he sustained the position of the respondent. The appeal is from such Order.

The exceptions raise three questions: (1) Was the bequest of the property described in Item 4 of the will adeemed by the sale thereof by the testator? (2) Assuming that an ademption has taken place, would the proceeds of sale from the property mentioned in Item 4 of the will pass to the appellants? (3) Was the Court in error in holding that the residuary effect of Item 3 of the will sufficient to carry the proceeds of the sale of the property to the respondent?

It is a fundamental rule that in construing the provisions of a will, the intention of the testator at the time the will is executed, is the primary inquiry of the Court. *Roundtree v. Roundtree*, 26 S. C. 450, 2 S. E. 474. In arriving at the intention of the testator, the will must be read and considered as a whole. *Watson v. Wall*, 229 S. C. 500, 93 S. E. (2d) 918; *Padgett v. Black*, 229 S. C. 142, 92 S. E. (2d) 153.

In the case of *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637, 640, this Court said:

"It is elementary that the cardinal rule of construction is to ascertain and effectuate the intention of the testator, unless that intention contravenes some well-settled rule of law or public policy. While there are certain rules of construction to be followed in seeking such intention, they are subservient to the paramount consideration of determining what he meant by the terms used in his will. *Peoples National Bank v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1. The same underlying principle was stated by Chief Justice Marshall in *Smith v. Bell,* 6 Pet. 68, 8 L. Ed. 322, as follows: "The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law' ".

The first question for determination is whether or not the specific legacy or bequest contained in Item 4 of the testator's will was adeemed because the testator disposed of the property in his own lifetime after the execution of his will. In the case of *Rogers v. Rogers,* 67 S. C. 168, 45 S. E., 176, 178, 100 Am. St. Rep. 721, a testator bequeathed to a legatee all the claims held by the testator against his father and all his interest in the father's estate. This Court held that such legacy was specific and was adeemed by the testator's collection of the same during his lifetime by taking a bond and mortgage on land sold by order of the court to pay the father's debts. In the Opinion of the Court, it is stated:

"The doctrine of ademption only applies to specific legacies. Specific legacies are adeemed when the thing bequeathed is, in the lifetime of the testator, lost, disposed of, or so substantially changed or altered as not to exist in specie when the will takes effect. *Bailey v. Wagner,* 2 Strob. Eq. 1, 1 Ency. Law (2 Ed.) 623, 627, and authorities cited in the notes. In the case of a legacy of a debt or claim, if the specific thing is disposed of or extinguished, the legacy is adeemed."

It is observed that the doctrine of ademption only applied to specific legacies. In the case of *Rogers v. Rogers, supra,* the Court has defined what is a specific legacy, as follows:

"In *Pell v. Ball,* Speer's Eq., 48, it is said: 'Whether a legacy is specific or not, must necessarily depend upon the nature of the thing referred to and described in the will. If the thing be capable of individuality, as a ring or picture, or if it be an assemblage of things, as a library or cabinet, or something capable of being separated by sensible distinctions, as the property on a particular estate, in all such cases the descriptions in the will set forth with distinctness the subject of bequest and make it specific. * * * It may be safely affirmed, I think, that whether a bequest couched in general terms is specific or otherwise, depends on this: if the things falling within the terms when enumerated (or if they had been enumerated by the testator) are in their nature specific, then the legacy is specific, otherwise it is not.' In that case, the testator gave and bequeathed to his wife, 'all property, personal and real, that I received or may receive hereafter from her father's estate, or from any of her relations and sources owing to my marriage with her,' was held to be a pecuniary legacy and not a specific legacy, because the testimony, which was competent for that purpose, showed that every dollar received from the sources mentioned was in money. In the case of *McFadden v. Hefley,* 28 S. C. 317, 5 S. E. 812, the court, quoting with approval the foregoing language taken from *Pell v. Ball,* held that a bequest of 'all horses, mules, cows, hogs, wagons, farming implements, household and kitchen furniture on said plantation' whereon testator resided, was a specific legacy."

The general rule of law is that specific legacies, and in this instance the personal property mentioned in Item 4 of said will, having been disposed of during the lifetime of the testator, are adeemed. It has been said that in the case of specific gifts of property, the nonexistence of the property at the death of the testator, or its consumption, loss, disposal by sale, gift or other alienation, during the lifetime of the testa-

tor, works an ademption of the legacy. 57 Am. Jur., Wills, para. 1580, at page 1081.

The only conclusion we can reach is that Item 4 of the will contained a specific legacy, and the business known as "Miller's Termite Control" having been disposed of by sale, was adeemed *in toto*.

The appellants also contend that a proper construction of the will is that the intention of the testator was to make a gift of the proceeds derived from the sale of the specific property, and since the proceeds derived from sale of said business are still a part of his estate and capable of identification and separation, an ademption, which would cut off the rights of the appellants, has not taken place.

By reference to Item 4 of said will, it is observed that nowhere did the testator bequeath the proceeds of sale of the business in the event that he had disposed of such property before his death. We must, therefore, conclude that the appellants are not entitled to the proceeds of said sale.

In 57 Am. Jur., Wills, para. 1586, at page 1086, we find the following:

"A question which, while not directly involving the doctrine of ademption by alienation, is so closely allied thereto as to warrant discussion in connection therewith, is the efficiency of a devise or bequest to pass the proceeds of a sale made during the testator's lifetime of the subject matter of such devise or bequest, or to pass other property in which such proceeds were invested. In this connection it may be said that there is practically a unanimity of opinion to the effect that property into which the proceeds of a sale of the kind in question have been converted cannot be substituted for the original subject matter of the gift, at least where it does not itself come within the descriptive language employed by the testator, and hence does not pass under the original devise or bequest. The same view is taken, with similar unanimity of opinion, with respect to the proceeds of a sale of specifically devised or bequeathed property, before their

investment in other property, whether the sale was voluntary or by operation of law, as a sale for taxes or a sale in eminent domain proceedings. Where the original devise or bequest is so worded as to include the proceeds of a sale of the subject matter or other property into which such proceeds may be converted, a different result may, of course, be reached. Thus, with respect to a devise of real estate to be sold by the executor and the proceeds distributed to designated beneficiaries, it has been held that the gift was not of the land itself but of the proceeds of a sale thereof, and that, upon the testatrix's sale of the property prior to her death, there was no ademption of the gift, and the proceeds passed thereunder to the beneficiaries named."

In the case of *Gist v. Craig,* 142 S. C. 407, 141 S. E. 26, the testatrix bequeathed to Epworth Orphanage the "proceeds" of the collection of notes and mortgages owned by her, which the executors were directed to collect and pay over to the orphanage. The notes and mortgages were collected by the testatrix after the execution of the will and for the funds she obtained two certificates of deposit in a bank. The identity of the funds was established by the evidence. It was held that the legacy was not adeemed and that the orphanage was entitled to the certificates of deposit.

In the case of *Watson v. Watson,* 230 S. C. 247, 95 S. E. (2d) 266, 269, the testator devised his farm to his wife for life, with remainder over, and provided that if he sold any realty, proceeds were to go to his wife for life, with remainder over. The testator sold his entire farm and deposited the proceeds of his sales in a Savings & Loan Institution, and, thereafter, used a portion to purchase a city home for himself and his wife. This Court held that the devise of the land was not adeemed by the *inter vivos* sale, and that the widow took a life estate in the city home and the Savings & Loan account. It should be pointed out that the will of the testator provided that in the event of a sale of the real estate, that the "proceeds" should go to his wife for and during the term of her natural life.

We quote the following from the cited case, which is taken from 4 Page on Wills, Lifetime Edition, 384, Ademption, Section 1528:

"If the terms of the will show that testator contemplates some change in the form of the gift, or even a sale and re-investment of the proceeds and that he intends to pass the proceeds, or the property in which the proceeds are reinvested, to the original beneficiary, full effect will be given to such provision. If the will provides that the devisee shall have a home upon the property which testator owns at his death, the sale of the farm which testator then owned, and the reinvestment of the proceeds in a house in town, does not operate as an ademption. * * * If testator gives the 'proceeds' of certain property, and it appears, from the terms of the will, that he gives such proceeds even if the property is sold in his lifetime, the beneficiary may have the proceeds as far as they can be traced."

We conclude that the appellants are not entitled to the proceeds derived from the sale of "Miller's Termite Control" for the reason that this Item of the will does not show that the testator contemplated any change in the form of the bequest or legacy, nor does it show that he intended to pass the proceeds in the event he disposed of such business.

The next question for determination is whether the ▪ Court erred in holding that the residuary effect of Item 3 of the testator's will was sufficient to carry the proceeds of the sale of "Miller's Termite Control" business to the respondent. We think so.

The conclusion that the entire estate goes to the widow, who is the respondent, is based upon the premise that the latter portion of Item 3 of said will constitutes a general residuary clause.

The testator obviously had in mind two classifications of his property. After payment of his debts and the legacy to the grandson mentioned in Item 2, he intended by Item 3 to give to his wife, in addition to the residence, any money on

hand and all chattels or articles owned for personal use. While the term "personal property", in its broadest legal signification, includes everything which is the subject of ownership, except lands or interest in lands, we think here it was used in a more restricted sense as including only goods and chattels for personal use. *Gist v. Craig, supra; Quick v. Owens,* 198 S. C. 29, 15 S. E. (2d) 837, 137 A. L. R. 201. The business from which he apparently earned a livelihood was put in a different category. He wanted this to go to his children and grandchildren intact. This is evident from the provision that this business was not to be sold for the payment of debts or legacies until all other personal property had been exhausted.

The terminology used in Item 3 is not that ordinarily found in a general residuary clause. Also to be noted is that this clause excludes the property bequeathed in other portions of the will. Nor is the arrangement that generally followed in inserting a general residuary clause. Ordinarily such a provision is inserted at the conclusion of the instrument. As shown by the annotation in 10 A. L. R., beginning on page 1522, all of these circumstances, while not controlling, may properly be considered in determining the nature of a residuary clause. The question after all is the intention of the testator as evidenced by the language used when considered in connection with the entire will. We are satisfied that he never intended to exclude his children and grandchildren for whom he sought so carefully to provide in Item 4 and leave his entire estate, with the exception of the small bequest made in Item 2, to his widow.

In *Garrett v. Garrett,* 1 Strob. Eq. 96, the Court said:

"Whatever may be the generality or comprehensiveness of the term used, if it be manifest, from the context of the will, that the residuary bequest was of a particular fund, or description of property, or other certain residuum, nothing else will pass."

In *Swinton v. Egleton,* 3 Rich. Eq. 201, it was stated:

"That a gift of the residue may have a limited operation, is unquestionable, where the words of the will and the manifest intention of the testator require such construction. Even general words sufficiently broad to cover the whole, may be confined in their operation by connection with other parts of the will."

We have not overlooked the presumption that a testator intends to dispose of all of his property and the general rule that the court will seek a construction of a will which will prevent intestacy. But it is also not to be presumed that the testator intended to disinherit his children. In Page on Wills, Lifetime Edition, Vol. 2, Section 928, page 856, it is stated:

"Where a residuary clause is capable of two constructions, one of which, making it a general residuary clause, will result in the exclusion of testator's heirs, and the other of which, making it a particular residuary clause, will leave a provision for testator's heirs under the intestate laws, that provision will be preferred which leaves a provision for the heirs."

In *Davis v. Davis,* 62 Ohio St. 411, 57 N. E. 317, 319, the Court quoted with approval the following:

"If the language of the testator, in a residuary clause of his will, will admit of a limited application, as well as one of a more general character, a court of equity will give it that construction which will be most favorable to the heir at law."

In *Charleston Library Society v. Citizens & Southern National Bank,* 200 S. C. 96, 20 S. E. (2d) 623, 632, the Court said:

"It is quite true that while the prevention of intestacy has been a factor in many of the cases this is a mere circumstance to be considered along with the other facts and circumstances in determining the testamentary intention, but it cannot be questioned that the rule that intestacy will be avoided if possible is a mere rule of construction and is subservient to the underlying principle that the intention of the testator must

be ascertained and made effective if lawful and possible. * * * The mere fact that there is a residuary clause or other clause to prevent intestacy does not in itself show that a particular devise or bequest was intended by the testatrix to pass under the residuary clause."

It is true that ordinarily a general residuary clause will pass everything that is not effectually disposed of, including lapsed legacies or the proceeds from the ademption of specific legacies. *Watson v. Wall, supra.* But as pointed out in *Peay v. Barber,* 1 Hill Eq. 95, quoting syllabus, "the rule does not apply where the residuary bequest is of a particular fund or description of property, or other certain residuum." There general words of a residuary bequest were restricted to particular classes of property upon the construction of the whole instrument, and it was held that the phrase "all the rest of my property", considered in reference to the will as a whole, did not include money and slaves. The *Peay case* was quoted with approval and followed in *Torre v. Chesnut,* 159 S. C. 282, 156 S. E. 906, 74 A. L. R. 540.

The exclusion of the testator's children is a result contrary to his obvious intent as evidenced by the face of the will, and should not be given effect unless required by some well settled rule of law or public policy, and we know of none which demands such an injustice. As stated in *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637, 640, "There is a growing tendency among the courts to apply, *not merely to affirm preliminarily,* the principle that in the construction of a will all of the provisions are to be considered and given effect so far as possible, and the true intent gathered from the four corners of the instrument."

It is our conclusion that the proceeds derived from the sale of "Miller's Termite Control" must be disposed of as intestate property.

The Order of the Circuit Court on the question of ademption is affirmed, but that portion which holds that the pro-

ceeds of the sale of the business will go to the widow under Item 3 is reversed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.