594 S.E.2d 845

Drusilla KEMP, Lenora Hickman, Cecil D. Rawlings,
and William W. Rawlings, III, Respondents,

v.

Snoda Elizabeth A. RAWLINGS, and William L. Shipley,
as Personal Representative of the Estate of William
Wyatt Rawlings, Jr., Defendants,

Of whom Snoda Elizabeth A. Rawlings is, Appellant.

No. 25800.

Supreme Court of South Carolina.

Heard March 4, 2004.

Decided April 5, 2004.

Charles E. Carpenter, Jr., S. Elizabeth Brosnan, and Jeff Z. Brooker, III, all of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia, for appellant.

Morris D. Rosen and Donald B. Clark, both of Rosen, Rosen & Hagood, LLC, of Charleston, for respondents.

Justice MOORE:

We are asked to determine whether the circuit court erred by affirming the probate court's decision finding appellant was not entitled to certain joint account funds following the death of her husband. We reverse.

## FACTS

This case involves the construction of the will of Colonel William Rawlings (Col.Rawlings). Col. Rawlings' adult children (respondents) filed a complaint in probate court alleging constructive trust, accounting, and conversion, against appellant, who is Col. Rawlings' widow. William L. Shipley, the attorney who is the personal representative of Col. Rawlings' estate and who drafted the will, was named as a party to the action. Respondents sought to recover funds appellant withdrew from joint accounts she held with Col. Rawlings approximately a year before his death.

Appellant, who was 78 years old, and Col. Rawlings, who was 77 years old, were married in December 1988. Both Col. Rawlings and appellant had adult children from prior marriages. In 1990, Col. Rawlings executed his will with the assistance of Attorney Shipley. The pertinent portions of the will state:

32

*ITEM III:* I have made adequate provisions for my beloved wife, SNODA ELIZABETH A. RAWLINGS, *as we have a joint or survivorship bank account or joint or survivorship savings account and she is entitled to and I give and bequeath all funds in said account* except for any Certificates of Deposit accounts which are not joint or survivorship accounts. . . .

(Emphasis added). Col. Rawlings left the residue of his property to respondents.

Attorney Shipley testified Col. Rawlings told him he had accounts solely in his name and joint accounts with appellant, none of which were identified by bank or by account number. Shipley testified Col. Rawlings stated his intent was to ensure appellant was well taken care of with all of his joint accounts if he predeceased her.

At the time the will was executed, Col. Rawlings and appellant had a joint checking and a joint savings account at C & S National Bank of South Carolina. When NationsBank acquired C & S Bank in 1991, those accounts were converted to NationsBank accounts. Subsequently, Col. Rawlings withdrew $80,000 from the NationsBank joint savings account and opened a joint brokerage account with appellant at First Union. In 1995, Col. Rawlings closed the First Union joint brokerage account and opened a new joint brokerage account with appellant at Wachovia. He also opened a joint checking account with appellant at Wachovia. He later closed the NationsBank accounts.

In 1997, Col. Rawlings, suffered a heart attack and was hospitalized. He was subsequently transferred to Roper Care Alliance and remained there for a month. When he returned home, he was cared for by appellant and paid sitters. A year later, when appellant could no longer care for Col. Rawlings at home, he was placed in the Charleston VA Hospital nursing facility. Appellant then instituted a guardianship/conservatorship action and, in February 1999, appellant was appointed to be Col. Rawlings' guardian and conservator.

Approximately two months before the petition was filed to declare Col. Rawlings incompetent, appellant, on the advice of counsel, withdrew over $130,000 from the Wachovia brokerage account she shared with him and deposited them into her

individual Wachovia brokerage account. Thereafter, she placed $30,000 of those funds in Col. Rawlings' conservatorship account. Some of the funds were withdrawn as cash and have not been accounted for; however, appellant indicated this money was spent on Col. Rawlings' medical care and home sitting care.

After a trial, the probate court found for respondents on the constructive trust and accounting claims, but declined to award any additional damages on the conversion claim. The probate court found Col. Rawlings bequeathed to appellant only the joint accounts existing at the time he executed the will and not the joint accounts existing at his death, that the bequest to appellant had adeemed, that the funds in the joint accounts opened after the execution of the will belonged to Col. Rawlings during his lifetime, and that appellant would be required to repay the funds she withdrew from those joint accounts to the estate.

The probate court imposed a constructive trust against appellant in the amount of $225,162.70. Attorney Shipley, as personal representative of the estate, was ordered to pay respondents' attorney's and accountant's fees out of the estate prior to appellant's exercising her right to an elective share pursuant to S.C.Code Ann. § 62–2–201 (Supp.2003).[1] Appellant appealed to the circuit court, which affirmed the probate court.

## ISSUE I

Did the probate court err by finding appellant was not entitled to the funds in the joint accounts under the will?

## DISCUSSION

Appellant argues the probate court erred by finding Col. Rawlings intended to leave only the joint accounts existing at the time he executed the will, *i.e.* the C & S Bank joint checking and savings accounts, to her.[2]

---

1. Section 62–2–201 provides that if a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share of one-third of the decedent's probate estate.

2. Appellant makes a *res judicata* argument that the probate court had already ruled on the proper disposition of the proceeds of the accounts

■■ An action to construe a will is an action at law. *Bob Jones Univ. v. Strandell*, 344 S.C. 224, 543 S.E.2d 251 (Ct. App.2001). When reviewing an action at law, on appeal of a case tried without a jury, our jurisdiction is limited to the correction of errors of law and this Court will not disturb the judge's findings of fact unless found to be without evidence that reasonably supports the judge's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

■ The cardinal rule of will construction is the determination of the testator's intent. *Matter of Clark*, 308 S.C. 328, 417 S.E.2d 856 (1992). A will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity, repugnancy, or inconsistency with the declared intention of the testator, as abstracted from the whole will, would follow from such construction. *Id.* The rules of construction are subservient to the primary consideration of ascertaining what the testator meant by the terms used in the written instrument itself, and each item of a will must be considered in relation to other portions. *Allison v. Wilson*, 306 S.C. 274, 411 S.E.2d 433 (1991). Every word or phrase in a will must be considered and, if practicable, effect must be given to them. *Id.* An interpretation that fits into the whole scheme or plan of the will is most apt to be the correct interpretation of the intent of the testator. *Lemmon v. Wilson*, 204 S.C. 50, 28 S.E.2d 792 (1944).

■ From the terms of the will, it appears the intent of Col. Rawlings in making the bequest to appellant was to make an adequate provision for her through their joint bank accounts. However, as the probate court found, extrinsic evidence is admissible to determine if there is a latent ambiguity in the will. If there is such an ambiguity, then the court may also consider extrinsic evidence to determine whether Col. Rawlings intended to leave appellant only the C & S Bank joint accounts they had at the time the will was executed or whether he intended to leave appellant the joint bank accounts that existed at the time of his death. *See Bob Jones Univ.*,

---

in its order in the guardianship/conservatorship action. However, the probate court did not in fact rule on how the funds should be distributed and specifically reserved ruling on that issue until a later date.

*supra* (court may admit extrinsic evidence to determine whether latent ambiguity exists; once the court finds latent ambiguity, extrinsic evidence is also permitted to determine testator's intent.). A latent ambiguity is one in which the uncertainty arises, not upon the words of the instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe. *Id.*

A latent ambiguity is present in Col. Rawlings' will. The words of the will bequeath the joint bank account or joint savings account appellant and Col. Rawlings have. When applying those words, especially the word "have," an ambiguity arises as to whether Col. Rawlings intended to leave only the C & S joint bank accounts to appellant because those were the accounts they had at the time the will was executed, or whether he intended to leave any joint bank account to appellant. Evidence of Col. Rawlings' intent can be found in the will and from Attorney Shipley's testimony.

The will provides that Col. Rawlings has "made adequate provisions for [his] beloved wife" through a joint bank account they "have." This indicates his intention that he desires his wife to be adequately provided for. Further, Attorney Shipley testified that, by his will, Col. Rawlings intended that appellant should be well taken care of with "all of his joint accounts" if he predeceased her.

At Col. Rawlings' death, the C & S Bank joint accounts were no longer in existence; however, Col. Rawlings transferred the funds in those accounts (after a series of transfers) to Wachovia in bank accounts held jointly with appellant. Given Col. Rawlings' intent and the fact that he is presumed to know that a will speaks at death, the probate court erred by finding that, under the will, appellant was not entitled to the joint accounts she and Col. Rawlings held at the time of his death. *See Shelley v. Shelley*, 244 S.C. 598, 137 S.E.2d 851 (1964) (will speaks at death); *In re Estate of Holden*, 343 S.C. 267, 539 S.E.2d 703 (2000) (everyone is presumed to have knowledge of the law). Further, the probate court erred by adding language to the terms of Col. Rawlings' will, *i.e.* by finding the joint account language referred only to joint accounts held at C & S Bank. There is no evidence to reasonably support the probate court's interpretation of the

will. *See Townes Assocs., Ltd., supra* (judge's findings of fact will not be disturbed unless found to be without evidence which reasonably supports judge's findings).

Accordingly, under the will, appellant is entitled to the funds in those accounts.[3] Further, as will be discussed *infra*, appellant is not required to return the funds she withdrew from the joint accounts to the estate.

## ISSUE II

Did appellant's withdrawal of funds from the joint accounts before Col. Rawlings' death cause the funds to become assets of the estate?

## DISCUSSION

 Appellant argues her withdrawal of funds from the joint accounts prior to Col. Rawlings' death did not cause the funds to become assets of the estate given he intended for her to have those funds.

Events similar to the instant case occurred in *Vaughn v. Bernhardt*, 345 S.C. 196, 547 S.E.2d 869 (2001), although there was not a will at issue. In *Vaughn*, the decedent held joint accounts, to which she was the sole contributor, with her nephew. A few days before her death, the nephew withdrew all of the funds from those accounts. Pursuant to S.C.Code Ann. §§ 62–6–103(a), 62–6–104(a), and 62–6–101(13) (1987),[4]

---

3. Given our conclusion that Col. Rawlings' intention in the will was to provide for appellant by giving her the funds in any joint accounts they may have, it is unnecessary to address appellant's argument that the probate court erred by finding the bequest of funds to appellant had adeemed. *See Rikard v. Miller*, 231 S.C. 98, 97 S.E.2d 257 (1957) (specific legacies are adeemed when thing bequeathed is, in testator's lifetime, lost, disposed of, or so substantially changed or altered as not to exist in kind when will takes effect).

4. Section 62–6–103(a) provides, "A joint account belongs, *during the lifetime of all parties*, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." (Emphasis added). Section 62–6–104(a) provides that any sums "remaining on deposit" at the time of the death of one of the parties to the account belong to the surviving party or parties as against the estate of the decedent. Finally, § 62–6–101(13) provides that the term "sums on deposit" specifically includes

we held the nephew was not entitled to the funds because the funds belonged to the decedent during her lifetime and did not belong to the nephew, such that he could withdraw the funds, prior to her death.

Because there was only $442 left in one of the joint accounts when Col. Rawlings died, the probate court correctly held appellant is entitled to the survivorship presumption as to that $442. However, as the probate court found, citing *Vaughn*, she is not entitled to the survivorship presumption as to the funds she withdrew. Appellant did not contribute any money to the joint accounts. Thus, under section 62–6–103(a), all of the funds from the Wachovia joint accounts belonged to Col. Rawlings during his lifetime because he was the sole contributor. Appellant had withdrawn almost all of the funds and deposited them into her own accounts. Therefore, she cannot claim ownership of the funds based on § 62–6–104(a), the right of survivorship provision.

 However, under the will, appellant is entitled to the funds she withdrew prior to Col. Rawlings' death. In *Vaughn*, we stated that, "[w]hile the Decedent may well have intended for [the nephew]to receive the Joint Accounts' funds after her death, the nephew chose to rely solely on the statutory presumption and did not present other evidence of intent." *See also* § 62–6–103(a) (joint account belongs, during the lifetime of all parties, to parties in proportion to net contributions by each to sums on deposit, unless there is clear and convincing evidence of different intent). In the instant case, appellant has presented "other evidence of intent" that Col. Rawlings intended for appellant to receive the joint accounts' funds after his death. This "other evidence of intent" is in the form of Col. Rawlings' will wherein he gave and bequeathed to appellant the funds in their joint account. Given our conclusion that, under the will, Col. Rawlings intended to give appellant the funds in the joint accounts, this is evidence of Col. Rawlings' intent for appellant to receive those funds regardless of whether she withdrew them prior to his death.

---

the balance payable on a multiple-party account and does not extend to withdrawn funds.

Accordingly, the probate court erred by finding appellant was not entitled to the funds she had withdrawn from the joint accounts as against Col. Rawlings' estate.

## ISSUE III

Did the probate court err by finding respondents are entitled to an award of attorney's fees and accountant's fees?

## DISCUSSION

The probate court held respondents were entitled to have their attorney's fees and accountant's fees paid out of the estate since they were compelled to bring this action and the action benefited the common fund of Col. Rawlings' estate. However, because appellant is entitled to keep the funds she withdrew from the joint accounts she held with Col. Rawlings, the probate court's ruling that respondents' attorney's fees and accountant's fees should be paid out of the estate is reversed.[5]

## CONCLUSION

We find the circuit court erred by affirming the probate court's decision denying appellant her entitlement to the funds, some of which were previously withdrawn by her, from the joint accounts she held with her husband prior to his death. Accordingly, the circuit court's order is **REVERSED.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice ROGER M. YOUNG, concur.

---

**5.** Appellant is not entitled to have her attorney's fees paid out of the estate given she has not defended an action for the recovery, preservation, protection, or increase of a "common fund." *See Petition of Crum,* 196 S.C. 528, 14 S.E.2d 21 (1941) (court may make allowance of reasonable fee out of common fund created or preserved, for an attorney representing a party who, at own expense, has successfully maintained or defended an action for recovery, preservation, protection, or increase of common fund).