PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Insulation Supply Company, Inc.,       
Respondent,
 
 
 

v.

 
 
 
Anderson Area Medical Center, Inc.,       
Appellant.
 
 
 

Appeal From Anderson County
Alexander S. Macaulay, Circuit Court Judge

Unpublished Opinion No. 2005-UP-300
Submitted April 1, 2005  Filed April 27, 2005

AFFIRMED

 
 
 
Stephen M. Reams, of Atlanta and Todd R. Davidson and  D. Michael Henthorne, both of Anderson, for Appellant.
Todd Raymond Ellis, Smith Ellis & Stuckey, PA, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Anderson Area Medical Center, Inc. appeals the trial courts judgment in favor of Insulation Supply Company, Inc. (ISC) in a collection action for work completed at the behest of ISC by its subcontractor, Aesthetic Designs, Inc. (ADI).  Anderson Medical argues the trial court erred in (1) allowing ISC to recover because ISC was not properly licensed and (2) in calculating the recovery amount.  We affirm.1
FACTUAL/PROCEDURAL BACKGROUND
In July 2000, Anderson Medicals facility was facing action by the South Carolina Department of Health and Environmental Control (DHEC) regarding fireproofing and fire-stopping concerns.  To avoid being fined or closed, Anderson Medical needed to repair areas of insufficient or failed fireproofing and fire-stopping material at its Health Campus facility.  Anderson Medicals general contractor, Beers Construction, did not come back and remedy the fireproofing problems when initially demanded.  Anderson Medical then contacted ISC about performing the work.   
ISC is an insulation company that had previously contracted with Anderson Medical on over forty projects since 1996 for the installation and removal of insulation and asbestos as well as, through a subcontractor, for fireproofing services.  Tripp Morris, the vice-president of projects at ISC, testified he met with Anderson Medical representative Mr. Chapman, toured the area where the problems existed, and was asked to begin work on the project right away, or that day if possible.  Morris informed Chapman that ISC did not perform fireproofing work but subbed out that type of work, that ISCs regular fireproofing subcontractor was unavailable and that ISC did not have its own crews available to start the work immediately.  Chapman asked Morris to find someone to get on the job so Anderson Medical could avoid DHEC sanctions.  Morris then suggested to Chapman that a good candidate for the job would be Charles Chason, owner of ADI.  Morris informed Chapman that ADI was a general carpentry contractor that had no fireproofing experience, but Chason was reputable, and the company was based there in Anderson so it would cut down on hotel and per diem charges of employees that would be incurred if they used ISCs employees.  
Morris, Chason and Chapman met at the Health Campus facility where Chapman reiterated the need to get the job started and asked for a proposal.  On July 22, 2000, Morris forwarded to Anderson Medical ADIs proposal to ISC.  The proposal set forth ADIs hourly rates and provided ISC would supply all fireproofing materials and application equipment while ADI would supply all labor for the repair work and all labor and materials to clean the work areas.  Morris told Chapman ISC would charge Anderson Medical cost plus 20% to perform the work.  The plan was for ISC and ADI to begin work on the deficient areas so that Anderson Medical would not be fined, and to work until the projects general contractor, Beers Construction, could come back in and complete the work.  ADI was told to proceed with the project.  
At the beginning of the project, Morris was at Anderson Medical twice a week to oversee the work and to ensure ADI met the hospitals requirements.  Whenever he made site visits, he would check the areas worked on for deficiencies and make sure there were no problems and that Anderson Medical was satisfied.  Between November 2000 and March 2001, ISC sent three invoices to Anderson Medical demanding payment of a total of $294,829 for the work performed.  After DHEC apparently became satisfied with the progress on the fireproofing problems, Anderson Medical terminated ISC and ADIs work on the project, but refused to pay the submitted invoices.  Thereafter, in January 2002, Beers Construction and its fireproofing contractor undertook the remaining remedial repairs.  
ISC brought suit against Anderson Medical alleging causes of action of breach of their agreement and quantum meruit.  The trial court, sitting without a jury, determined the charges of ISC, with an adjustment for some misapplication, were reasonable and proper and ordered Anderson Medical to pay $278,909.19.  Anderson Medical filed a motion to alter or amend pursuant to Rule 59(e), SCRCP, arguing ISC failed to abide by South Carolina contractor licensing requirements because ADI held only a Group Two license and ISC failed to supervise ADI as required by S.C. Code Ann. § 40-11-270, thereby precluding recovery in this case.  The trial court denied Anderson Medicals motion to alter or amend and this appeal followed.  
STANDARD OF REVIEW
In an action at law, tried without a jury, the appellate courts jurisdiction is limited to the correction of errors of law and the trial judges findings of fact will not be disturbed on appeal unless found to be without evidence that reasonably supports his findings.  Kemp V. Rawlings, 358 S.C. 28, 34, 594 S.E.2d 845, 848 (2004).  The trial judges findings are equivalent to those of a jury in an action at law.  King v. PYA/Monarch, Inc., 317 S.C. 385, 389, 453 S.E.2d 885, 888 (1995).
LAW/ANALYSIS
I.                  South Carolina Contractors Licensing Statutes
Anderson Medical first contends the trial court erred in ruling ISC could recover where ISC failed to abide by the requirements imposed by the licensing statutes.  In particular, Anderson Medical asserts ADI lacked the required license for a job of that magnitude and ISC failed to provide the supervision required by law.  Thus, it argues ISC is precluded from bringing an action in either law or equity to enforce the provisions of the agreement.  We disagree.
Initially, we question whether Anderson Medical has properly preserved this issue for review.  While Anderson Medical asserted in its motion to alter or amend it argued at trial that ISC failed to abide by the licensing requirements, there is absolutely no evidence in the record before us that this issue was raised at the trial level.  Anderson Medical did not raise these licensing statutes as a defense in its answer.  Further, the record contains no argument of counsel before the trial court, and neither the order for judgment nor the order denying Anderson Medicals motion to alter or amend indicate the issue was actually raised below.  See Patterson v. Reid, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995) (A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.); Crestwood Golf Club, Inc. v. Potter, 328 S.C. 201, 215, 493 S.E.2d 826, 834 (1997) (the burden is on the appellant to provide an adequate record on appeal).  At any rate, we find no error in the trial courts determination that ISC is entitled to recover.  
To perform general or mechanical contracting services in excess of $5,000.00, an entity must obtain an appropriate license from the South Carolina Contractors Licensing Board.  S.C. Code Ann. §§ 40-11-10 and 40-11-30 (2001).  A general contractor with a Group Two license is limited to bidding on jobs that do not exceed $100,000.00.  S.C. Code Ann. § 40-11-260(A)(2) (2001). 2  Further, § 40-11-370(C) of the South Carolina Code provides an entity which does not possess a valid license may not bring an action either at law or in equity to enforce the provisions of a contract.  S.C. Code Ann. § 40-11-370(C) (Supp. 2004).  However, our licensing statutes also provide that [l]icensees may utilize the services of unlicensed subcontractors to perform work within the limitations of the licensees license group and license classification or subclassification; provided, the licensee provides supervision. S.C. Code Ann. § 40-11-270(C) (2001).  Although ADI possessed only a Group Two license, ISC held the requisite general contractors license for the work performed.  Thus, ISC would not be precluded from recovery under § 40-11-370(C) as long as ISC provided supervision to ADI pursuant to § 40-11-270(C).
On appeal, Anderson Medical contends the trial court determined ADI worked under the direct supervision of Anderson Medical and not ISC.  It therefore argues the trial court determined ISC performed no level of supervision of ADI and, thus, did not comply with § 40-11-270(C).  We disagree.
At trial, Morris testified that he told Anderson Medical, if we do some work for the hospital, youre going to have to have somebody with me the whole time showing me what needs to be done, where to go, and well get it done.  He stated that before ISC would accept the contract with Anderson Medical, they would have to agree to provide our forces with someone from the hospital to direct us in what work to be performed at the hospital, because the scope of the work was so large . . . they had to be there to tell us what to do.  Morris further testified the arrangement was for him to supervise and oversee the project to make sure that ADIs work met the requirements of the hospital.  He stated: 

At the beginning of the project I was probably there twice a week for a couple hours each time.  After maybe a month of the project into force, I would probably visit the project once every couple of weeks just to observe the work, talk with my subcontractor to make sure things were okay with the hospital, we werent causing any problems.

He further testified he was in contact with the hospital by telephone twice a week every week throughout the entire project and did not charge the hospital for any man-hours he personally spent on the job.  
ADIs owner, Chason, was asked at trial about Morris visits to the job site and his supervision over the project.  Chason responded that Morris was on the project in the beginning once a week and thereafter twice a month, but they had continuous conversations by phone and Chason alerted Morris every week of the status of the project and immediately informed him of any problems that arose.  Morris would direct ADI to make adjustments whenever he had any concerns with the project.  When asked if he felt he had inadequate supervision from ISC, Chason testified, No sir.  We were loaded with supervision from ISC and from Anderson Medical Center.  
While the court did state in its order that in the latter part of July 2000, ADI was told to proceed with the project under the direct supervision and direction of [Anderson Medical], it made no specific finding that ISC did not provide supervision on the project.  Further, while the record before us clearly demonstrates that Anderson Medical provided someone from the hospital to direct both ISC and ADI in what work was to be performed, the only evidence of record is that ISC supervised ADI in the performance of that work.  Therefore, the trial court did not err in ruling in favor of ISC. 3  
II.               Valuation Method
Anderson Medical next asserts the trial court erred in calculating the reasonable price for the fireproofing work.  We disagree.

An agreement to do work on a cost-plus basis does not mean that one has the right to expend any amount of money he may see fit upon the work, regardless of the propriety, necessity, or honesty of the expenditure, and then compel repayment by the other party, who has confided in his integrity, ability, and industry.  Indeed, in any cost-plus contract there is an implicit understanding between the parties that the cost must be reasonable and proper.  

Watson & Howell Builders v. Billingsley, 310 S.C. 39, 41, 425 S.E.2d 43, 44 (Ct. App. 1992) (citation omitted).
Anderson Medical contends the trial court applied an erroneous method for calculating a reasonable price for the project.  Specifically, it objects to the trial courts comparison of ADIs weekly charges with those from Beers Construction when Beers came back on the job, contending Beers completed more work for less money.  
The trial court did compare the weekly charges of Beers and ISC, but did not, as Anderson Medical claims, base its conclusion the charges were reasonable entirely on the fact the weekly wages were commensurate.  Rather, the court considered that both ISC and ADI lacked experience at the beginning of the contract, a fact of which Anderson was fully advised, and there was a greater difficulty of work in the areas that ISC and ADI completed.  Additionally, the trial court found Anderson Medicals primary concern was the avoidance of sanctions and Anderson Medical apparently determined the length of time involved was proper as it did not direct ISC or ADI to cease work on the project until the fireproofing and fire-stopping issues were resolved with DHEC.  Anderson Medical found itself in the position of needing immediate remedial work performed on its building and requested ISC to subcontract the work to ADI to avoid sanctions from DHEC.  It accepted that ISC would subcontract the work to the inexperienced ADI.  Thus, the fact that ADI may have progressed more slowly than Beers does not mean the charges were unreasonable.  Further, ISC presented the expert testimony of Donald Nicholson, who stated he reviewed the time sheets, man-hours and difficulty in the location of the job.  Nicholson stated, I believe that based on what Ive seen, what Ive observed as clean up, what I know to be the technique and means and methods of hallways, pipes, sprinkler heads . . . the protection and cleaning of all that and the time on the time sheets and the man hours involved, I believe that to be a pretty correct number based on the information I have.  We find the evidence supports the trial courts determination the charges were reasonable and proper.
For the foregoing reasons, the order of the trial court is
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

1 We decide this case without oral argument pursuant to Rule 215, SCACR.
2 For purposes of this appeal, ISC concedes ADI held a Group Two license at the time it performed the work in question.  
3 See Rule 220(c), SCACR (The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.).