725 S.E.2d 516

ESTATE OF Caroline B. GILL by J. Louis GRANT
and Thomas S. Baldwin, Co-personal
Representatives, Appellant,

v.

CLEMSON UNIVERSITY FOUNDATION, Amy Nichol Castillo, Thomas Smith Baldwin, Shannon Whitehead, Jordan White-head, I.H. Gregorie, Beth Gregorie, and Morgan Stanley & Company, Incorporated, Respondents.

No. 4951.

Court of Appeals of South Carolina.

Heard Jan. 23, 2012.
Decided March 7, 2012.

420

Dean Britton Bell, of Hilton Head Island, for Appellant.

John M. Jolley, of Hilton Head Island; and Robert L. Widener and Celeste T. Jones, of Columbia, for Respondents.

SHORT, J.

This dispute arises from the Last Will and Testament (the Will) of Caroline Gill and a bequest from Gill's Estate to Clemson University Foundation (Clemson) to establish and fund the Danny Lee Ford Endowed Scholarship Fund (the Scholarship). Gill's personal representatives, J. Louis Grant and Thomas Baldwin, on behalf of Gill's Estate (the Estate), appeal from the special referee's order finding the Danny Ford bequest was unambiguous; prohibiting the Estate from introducing extrinsic evidence; ordering the Estate to execute the bequest with estate funds; and determining the IRA in Gill's name was a non-testamentary asset that must be executed as set forth in the documents associated with the IRA and did not satisfy the Danny Ford bequest. The Estate argues the special referee erred in: (1) failing to consider extrinsic evidence of Gill's intent because the terms of the Will and IRA beneficiary designation, as they pertain to the establishment and funding of the Scholarship, were ambiguous; (2) prohibiting Grant's proffered testimony because it was relevant and should have been admitted as an exception to the hearsay rule pursuant to Rule 803(3), SCRE; (3) refusing to make a factual

finding that Gill intended to make a single bequest of $100,000 to Clemson; (4) including factual findings in its order that were not supported by the record; (5) failing to find the written beneficiary designation in Gill's IRA Adoption Agreement Form (the Agreement) satisfied the contemporaneous writing requirement of S.C.Code Ann. § 62–2–610; and (6) not requiring all the funds paid to Clemson be held and administered in strict accordance with the terms of item II(e) of the Will. We affirm.

## FACTS

Pursuant to item II(e) of the Will, Gill bequeathed $100,000 to Clemson to establish the Scholarship.[1] The Will specified that the Scholarship fund "shall be administered by the said legatee [Clemson] by using the income therefrom (but never any of the principal) to provide scholarships at [Clemson] for academically deserving football players." The Will further stated the money was "to be used to defray the expenses of tuition, books, activities, and related living expenses such as room and board." The Estate contends that to provide a funding mechanism for the Scholarship, Gill specifically designated the Scholarship as the beneficiary of $100,000 contained in an IRA account with Morgan Stanley.[2] The Agreement, implemented almost one year after Gill executed the Will, lists the designated primary beneficiaries as "Clemson University Foundation $100,000 Danny Ford Scholarship Fund" and "Caroline B. Gill Estate."[3] The Estate asserts the gift was structured that way to provide the most tax-efficient method to fund the new endowment created by the Will. Clemson maintains it is entitled to both the $100,000 from the Morgan Stanley IRA account and $100,000 from the Will. As such, Clemson requested and received from Morgan Stanley $100,000 from Gill's IRA.

---

1. Gill executed the Will on May 27, 2004.

2. The Morgan Stanley retirement account contained $180,959.25 on February 28, 2009.

3. Gill signed the Agreement on April 26, 2005, and she passed away on November 12, 2008.

The Estate filed an amended complaint in probate court on July 13, 2009, seeking a declaratory judgment and a temporary injunction, adding Morgan Stanley as a party. Clemson filed a motion for removal of the matter to circuit court, which the probate court granted. The matter was referred to a special referee by consent order. On November 18, 2009, the Estate filed a second amended complaint, removing the cause of action for a temporary injunction and Morgan Stanley as a party. A non-jury trial was held on November 30, 2009, and the special referee took the matter under advisement. The special referee issued his order on December 15, 2009, finding the Will was unambiguous, and therefore, no extrinsic evidence could be considered to determine Gill's intent. The referee further found the IRA was a non-testamentary asset that passed outside the Will. The Estate filed a motion to reconsider, which was denied. This appeal followed.

## STANDARD OF REVIEW

■■■■■ This case began as an action for declaratory relief in probate court. "Whether an action for declaratory relief is legal or equitable in nature depends on the plaintiff's main purpose in bringing the action." *Williams v. Wilson,* 349 S.C. 336, 340, 563 S.E.2d 320, 322 (2002). "An appellate court's determination of the standard of review for matters originating in the probate court is controlled by whether the cause of action is at law or in equity." *Holcombe–Burdette v. Bank of Am.,* 371 S.C. 648, 654, 640 S.E.2d 480, 483 (Ct.App.2006). This case involves the construction of a will, which is an action at law. *Id.* "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. Extrinsic Evidence

The Estate argues the special referee erred in failing to consider extrinsic evidence of Gill's intent because the terms of the Will and IRA beneficiary designation, as they pertain to

the establishment and funding of the Scholarship, were ambiguous. We disagree.

■■■■■ "The paramount rule of will construction is to determine and give effect to the testator's intent." *Holcombe–Burdette*, 371 S.C. at 655, 640 S.E.2d at 483; *see* S.C.Code Ann. § 62–1–102(b)(2) (2009) ("The underlying purposes and policies of this Code are . . . (2) to discover and make effective the intent of a decedent in the distribution of his property."). "In construing the provisions of a will, every effort must be made to determine and carry out the intentions of the testator." *Id.* at 656, 640 S.E.2d at 483. "A will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity, repugnancy, or inconsistency with the declared intention of the testator, as abstracted from the whole will, would follow from such construction." *Kemp v. Rawlings*, 358 S.C. 28, 34, 594 S.E.2d 845, 849 (2004). "The rules of construction are subservient to the primary consideration of ascertaining what the testator meant by the terms used in the written instrument itself, and each item of a will must be considered in relation to other portions." *Id.* If the terms or provisions of a will are ambiguous, the court may resort to extrinsic evidence to resolve the ambiguity. *Bob Jones Univ. v. Strandell*, 344 S.C. 224, 230, 543 S.E.2d 251, 254 (Ct.App.2001). Two types of ambiguities are found in interpreting wills: patent and latent. The distinction between the two is that in patent ambiguity, "the uncertainty is one which arises upon the words of the . . . instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe." *Id.* (quoting *In re Estate of Fabian*, 326 S.C. 349, 353, 483 S.E.2d 474, 476 (Ct.App.1997)). In latent ambiguity, "the uncertainty arises, not upon the words of the . . . instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe." *Id.* A court may admit extrinsic evidence to determine whether a latent ambiguity exists, and if the court finds a latent ambiguity, extrinsic evidence is also permitted to help the court determine the testator's intent. *In re Estate of Prioleau*, 361 S.C. 627, 632, 606 S.E.2d 769, 772 (2004).

█ At trial, the Estate asserted the Scholarship did not exist prior to the Will, and that fact alone created an ambiguity that required the special referee to resort to extrinsic evidence. On appeal, the Estate asserts a latent ambiguity in the Will provided the special referee with the legal authority to look beyond the "four corners" of the Will to extrinsic evidence to ascertain Gill's intent. Specifically, the Estate argues "a latent ambiguity exists when considering the circumstances as a whole and the documents that were executed to carry out [Gill's] intent." Thus, the Estate asserts the special referee should have considered "both [the] Will and the [Agreement] as part of her overall plan and scheme and construe the two together to determine her intent." The extrinsic evidence offered by the Estate consisted of the Agreement and witnesses presented by the Estate. Grant testified he instructed Gill that if she designated a portion of her IRA to Clemson, she would get a charitable deduction of $100,000 and not have to pay ordinary income taxes on the $100,000.[4] Linda Fraser, a financial advisor at Morgan Stanley, testified she went to Gill's home to meet with her, and Gill signed the Agreement. Fraser said she was not familiar with the terms of the Will, and Grant told her the Agreement was for estate planning reasons to establish the Scholarship. She further testified that nothing in the Will states the IRA account was to satisfy the bequest to Clemson. Thomas Baldwin, co-personal representative, testified Gill told him she was going to set up the Scholarship, but he did not know about the Agreement until after her death.

Clemson asserts that because the Estate did not make the latent ambiguity argument to the special referee, it is not preserved for our review. The Estate first raised the latent ambiguity argument in its memorandum in support of its motion to reconsider. Therefore, we find this issue is not preserved. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Kiawah Prop. Owners Grp. v. Pub. Serv.*

---

4. Grant was Gill's personal accountant and a family friend. Grant admitted that at the time he gave her this advice, he was not aware that an IRA's proceeds pass outside of a will and are not a part of the testamentary estate.

*Comm'n of S.C.,* 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (finding the issue is not preserved because a party may not raise an issue in a motion to reconsider, alter, or amend a judgment that could have been presented prior to the judgment).

## II. Testimony

 The Estate argues the special referee erred in prohibiting Grant's proffered testimony because it was relevant and should have been admitted as an exception to the hearsay rule pursuant to Rule 803(3), SCRE. We disagree.

Rule 803(3) of the South Carolina Rules of Evidence provides that a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition is not excluded by the hearsay rule. In full, the rule does not exclude:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Rule 803(3), SCRE. At trial, Clemson objected to parts of Grant's testimony as being hearsay and violative of the dead man's statute.[5] The Estate argued his testimony was admissible as an exception to the hearsay rule under Rule 803(3), SCRE. The court sustained Clemson's hearsay objection, and Grant proffered testimony that Gill told him she intended for the IRA designation to fulfill the Clemson bequest created in the Will. The Estate asserts Grant's testimony should have been admissible to show that "the IRA Beneficiary Designation was part of [Gill's] overall scheme and that the designation was part of the plan to fund the gift expressed in [the] Will" and the "testimony is relevant because it goes to [Gill's] intent."

However, Grant's testimony related to a statement made by Gill almost a year after she created the Will; therefore, her statement was not made at the time of the making of the Will to show her belief at that time, and the hearsay exception

---

5. As to Clemson's objection based on the dead man's statute, the special referee allowed Grant's testimony, but reserved its objection.

provided in Rule 803(3) does not apply to the testimony. Accordingly, we hold the special referee did not err in prohibiting Grant's proffered testimony because it was not admissible under Rule 803(3), SCRE, as an exception to the hearsay rule.

### III. Factual Findings

■ The Estate argues the special referee erred in refusing to make a factual finding that Gill intended to make a single bequest of $100,000 to Clemson. We disagree.

The Estate asserts the testimony confirms this fact and, even if the special referee found the extrinsic evidence was not admissible, he could have found it was Gill's intent to leave a single bequest of $100,000. We already determined the special referee was correct in finding the Will was unambiguous, giving Clemson a bequest of $100,000. Because the IRA account was a non-testamentary asset that passed outside the Will, it would have been error for the special referee to make a finding that Gill only intended to make a single bequest of $100,000. Section 62–6–106 of the South Carolina Code states that "[a]ny transfers resulting from the application of § 62–6–104 are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary...." S.C.Code Ann. § 62–6–106 (2009). Further, as Clemson asserts in its brief, the Estate did not challenge the special referee's finding that the IRA was a non-testamentary gift; therefore, this is law of the case. *See Georgetown Cnty. League of Women Voters v. Smith Land Co.*, 393 S.C. 350, 357, 713 S.E.2d 287, 291 (2011) (holding an unappealed ruling, right or wrong, is the law of the case).

■ The Estate also argues the special referee erred in including factual findings in its order that were not supported by the record. We disagree.

Specifically, the Estate disagrees with the last paragraph on page five of the special referee's order. The part of that paragraph the Estate disagrees with reads:

Decedent Gill was not an uneducated testatrix minimally counseled in estate law. A few years before her death, Decedent Gill dealt with the death and estate of her husband (also a supporter of all things Clemson University). In dealing with the estate of her late husband, Decedent Gill

received counsel from two attorneys, using one of them to draft the Will sub judice. The Court takes note that the Estate decided not to present the testimony of either of these attorneys.

The Estate asserts there was no testimony concerning Gill's education or that she had anything to do with the planning of her late husband's estate or its administration. Further, the Estate asserts the testimony of Gill's attorneys concerning any matters pertaining to their representation of her would be subject to the attorney-client privilege, which survives death.

In its reply to the Estate's motion for reconsideration, Clemson stated it was "opposed to [the Estate's] request, but [did] not object to the [special referee] striking 'and supplemental findings of fact' from the last paragraph on page [five] of its Order." In its brief, Clemson asserts:

Assuming all of [the Estate's arguments] to be true, and [they are] not, it has no effect on the appealed order. The trial court based its ruling on the law and the other facts in this case. [The Estate does] not suggest how any presumed errors affected the [special referee's] decision.

First, we find the factual findings were supported by the record. Grant testified Gill had a "huge" problem with the personal representatives of her husband's estate, and she had to petition the court to have them removed as the trustees. Grant also testified Gill had an attorney draft the Will and two other attorneys helped her remove the trustees from her husband's trust. These attorneys did not testify for the Estate.

Additionally, after making these findings of fact, the special referee wrote, "[i]t is upon this backdrop that the Court notes that the best indicator of what a testator intends to occur after her passing, is found in her final expression. In the case of Decedent Gill, her final expression was found in the documents she signed." Thus, we agree with Clemson that the special referee based its ruling on the law and the other facts in the case, and the Estate does not suggest how any presumed factual errors affected the special referee's decision.

## IV. S.C.Code Ann. § 62-2-610

The Estate argues the special referee erred in failing to find the written beneficiary designation in the Agreement

satisfies the contemporaneous writing requirement of S.C.Code Ann. § 62–2–610. We disagree.

Section 62–2–610 of the South Carolina Code provides:

Property which a testator gave in his lifetime to a person is treated as a satisfaction of a devise to that person in whole or in part, only if the will provides for deduction of the lifetime gift, or the testator declares in a contemporaneous writing that the gift is to be deducted from the devise or is in satisfaction of the devise, or the devisee acknowledges in writing that the gift is in satisfaction.

S.C.Code Ann. § 62–2–610 (2009). At trial, Clemson argued the Estate's claims were barred by this section. In its supplemental memorandum of law, the Estate argued in response that section 62–2–610 only contemplates lifetime gifts, and the IRA was not a gift during Gill's life because it did not pass until her death. In the alternative, the Estate asserted in its supplemental memorandum of law and motion for reconsideration that if the Agreement form was itself a lifetime gift, then it satisfied the contemporaneous writing requirement because it designated Clemson as the beneficiary. It also asserted Fraser's testimony regarding her meeting with Gill, and the fact that the Morgan Stanley check was restricted to Clemson for the benefit of the Scholarship, when taken together with the Agreement, was sufficient to satisfy the statute's requirements.

Although Gill designated Clemson as a beneficiary on the IRA Agreement, the Will did not provide for the deduction of the money. Also, the Agreement did not state the IRA amount was to be deducted from the $100,000 devise or was in satisfaction of the devise. Further, Clemson did not acknowledge in writing that the IRA account was in satisfaction of the $100,000 devise. Therefore, we find the special referee correctly found the written beneficiary designation in the Agreement did not satisfy the contemporaneous writing requirement of section 62–2–610.

## V. Administration of Funds

The Estate argues the special referee erred in not requiring all the funds paid to Clemson be held and administered in strict accordance with the terms of item II(e) of the Will. We disagree.

The Estate asserts that if the special referee determined Clemson is to receive $200,000 from Gill ($100,000 from the Will and $100,000 from the IRA), he should have required all the funds be held in strict accordance with the terms of the Will. The Will specified that the Scholarship fund "shall be administered by the said legatee [Clemson] by using the income therefrom (but never any of the principal) to provide scholarships at [Clemson] for academically deserving football players." The Will further stated the money was "to be used to defray the expenses of tuition, books, activities, and related living expenses such as room and board." In his order denying the Estate's motion to reconsider, the special referee ordered that the funds paid to Clemson from the Estate be held and administered in strict accordance with the terms of the Will. We find the special referee was correct that the $100,000 from the Will should be administered according to the Will's terms. Also, at trial, Clemson stated it was "perfectly happy to comport with the restrictive language set forth in the Will." However, because the IRA is a non-testamentary asset, it would have been error for the special referee to require the IRA funds to be administered according to the Will.

## CONCLUSION

Accordingly, the special referee's order is
**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.