745 S.E.2d 397

Effie Sandra L. TURPIN, C.E. Lowther Jr., Clayton Clark Lowther, and Mitchell Saxton Lowther, individually and representing as a class of beneficiaries of the Estate of C.E. Lowther, Sr., Respondents,

v.

E. LeGrand LOWTHER, individually and as Personal Representative of the Estate of C.E. Lowther, Sr., and Mark Allen Lowther, as Personal Representative of the Estate of C.E. Lowther, Sr., Defendants,

Of whom E. LeGrand Lowther is Appellant.

Appellate Case No. 2012–211007.

No. 5152.

Court of Appeals of South Carolina.

Heard April 10, 2013.

Decided July 3, 2013.

Rehearing Denied July 24, 2013.

H. Fred Kuhn, Jr., Moss Kuhn & Fleming, PA, of Beaufort, for Appellant.

Harley Delleney Ruff and Carol Clayton Ruff, Ruff & Ruff, LLC, of Beaufort, and R. Thayer Rivers, Jr., of Ridgeland, for Respondents.

FEW, C.J.

This is an action by three beneficiaries of the estate of C.E. Lowther, Sr. against a personal representative of the estate, E. LeGrand Lowther.[1] They allege LeGrand breached a fiduciary duty to the beneficiaries when he did not disclose to them that he was negotiating with third parties to sell properties belonging to the estate while he was simultaneously negotiating with the beneficiaries to purchase from them those same properties. The probate court found LeGrand breached his fiduciary duty and awarded the beneficiaries $69,051 in damages. On appeal, the circuit court agreed but modified the judgment to $289,924. We affirm the circuit court.

## I. Facts and Procedural History

Mr. Lowther died in 2004 and was survived by his eight children. At the time of his death, Mr. Lowther owned (1) a 40.81 acre parcel of real property and (2) an undivided one-fourth interest in a 226.35 acre parcel of real property located

---

1. There are seven beneficiaries of the estate. Three beneficiaries—Effie Sandra Turpin, C.E. Lowther, Jr., and Mitchell Saxon Lowther—brought suit against the personal representatives, LeGrand and Mark Allen Lowther, who are also children of Mr. Lowther. The probate court dismissed Mark as a defendant in its final order.

in the Wellington Plantation area of Jasper County.[2] LeGrand owned an undivided one-half interest in the Wellington tract, and his brother Mitchell owned an undivided one-fourth interest in the property. The probate court appointed LeGrand and Mark personal representatives of the estate.

Mr. Lowther's will, which excluded LeGrand at LeGrand's own request, devised the 40–acre parcel and his undivided one-fourth interest in the Wellington tract to his other seven children in equal shares. Additionally, the will devised a one-half interest in a vacant subdivision located in Beaufort County known as Echo Tango that consisted of six lots, two of which had previously sold for $110,000 and $700,000, respectively. Although the Echo Tango property was titled solely in LeGrand's name, LeGrand agreed to share profits generated from Echo Tango with Mr. Lowther while he was still living. Even though LeGrand and Mr. Lowther had previously discussed jointly owning the Echo Tango property, LeGrand testified no agreement was finalized before Mr. Lowther's death.

The beneficiaries of the estate wanted to sell the land they inherited because some were in financial need. In early 2005, International Society of Investors, LLC ("ISI") contacted LeGrand about purchasing the Wellington tract. LeGrand showed the property to two of ISI's principals, Michael Jones and Monte Perry. During negotiations with ISI, LeGrand told Jones that if ISI wanted to purchase the Wellington tract, the company would also have to buy the 40–acre parcel as a "package deal."

During the summer of 2005, LeGrand discussed with the beneficiaries his plan to purchase their interests in the 40–acre parcel and the Wellington tract. LeGrand separately discussed with Mitchell the possibility of purchasing his one-fourth interest in the Wellington tract. LeGrand told the beneficiaries he would not buy their interests unless each decided to sell. Following these discussions, LeGrand made an initial offer of $275,000 to each beneficiary, but not all accepted. LeGrand testified that by August, all the beneficiaries had agreed on a price, so he asked his attorney to begin

---

2. We refer to these properties as the "40–acre parcel" and the "Wellington tract," respectively.

preparing individual contracts for the purchase of their interests.

In October 2005, LeGrand prepared and delivered to each beneficiary a proposed contract for the purchase of their interests in the 40–acre parcel and the Wellington tract. All the contracts, excluding Mitchell's contract, contained a proposed purchase price of $325,000. The contracts also provided that each beneficiary must quitclaim to LeGrand any right they may have in the Echo Tango lots. Each beneficiary signed his or her respective contract and returned it to LeGrand in October. LeGrand delivered to Mitchell a similar contract to purchase his one-seventh interest in the 40–acre parcel and one-fourth interest in the Wellington tract. Mitchell's contract, however, did not provide a purchase price. Mitchell filled in a purchase of $1,025,000, signed the contract, and returned it to LeGrand in October.

Also in October, ISI sent LeGrand two proposed contracts for the purchase of the 40–acre parcel and the Wellington tract. The contracts were dated October 12, 2005, but LeGrand claims he did not receive them until October 18 or 19, 2005. ISI offered to buy the 40–acre parcel for $810,000. The contract for the Wellington tract, however, did not provide a purchase price. LeGrand filled in a purchase price of $5,450,000 for the Wellington tract. The contracts also identified the seller as "LeGrand Lowther, Mitchell Lowther, *et al.*," but LeGrand crossed out "Mitchell Lowther, *et al.*," making LeGrand the only named seller on the contracts. He signed both contracts on October 24, 2005 and returned them to ISI.

Three beneficiaries testified that when they signed their contracts in mid-October, they were unaware of LeGrand's efforts to sell the 40–acre parcel and the Wellington tract to ISI. Two of the beneficiaries claimed they asked LeGrand several times if he had "a sale" or "a contract" for the property, to which LeGrand responded, "I don't but I think I can sell it, people [are] interested in it, I believe I can sell it." LeGrand testified he did not disclose the negotiations and contracts with ISI to the beneficiaries because he "didn't have a sale; [he] had an agreement." Moreover, he "already had an agreement with [the beneficiaries] to buy everything from

them, individually" so he contended it was none of their business.

On December 8, 2005, LeGrand and Mark, as personal representatives, executed a deed of distribution releasing the 40–acre parcel and the Wellington tract to the beneficiaries. The same day, each beneficiary executed a deed conveying the 40–acre parcel to LeGrand. Subsequently, LeGrand closed on a loan—borrowing $585,000 and securing the loan with a mortgage on the 40–acre parcel—and paid each beneficiary $73,000 from the loan proceeds, for a total purchase price of $511,000.[3] The beneficiaries were aware LeGrand needed to borrow money to pay the purchase price. At the closing, LeGrand denied the existence of a potential buyer for the property and did not disclose that he had signed and sent ISI a proposed contract for the 40–acre parcel.

On December 20, 2005, the beneficiaries executed deeds conveying their interests in the Wellington tract to LeGrand. At the closing, LeGrand denied the existence of a potential buyer for the property and did not disclose that he had received both contracts back from ISI in mid-December, both having been executed by ISI on November 21. Three beneficiaries testified they relied on LeGrand's denials at the closings when they sold their interests.

To finance the purchase of the Wellington tract, LeGrand executed seven promissory notes to the beneficiaries—six notes for $252,000 and one to Mitchell for $952,000—for a total purchase price of $2,464,000. All notes were payable in full, without interest, on December 31, 2006. The sum of the notes was secured by a mortgage on the Wellington tract and, in the event of default, the beneficiaries were entitled to a reconveyance of their interests in the Wellington tract and a share of the net proceeds from the sale of any Echo Tango lots.

On February 17, 2006, LeGrand sold the 40–acre parcel to Amberwinds, LLC for $810,000. The probate court found Amberwinds was the assignee of the purchase contract from ISI, and the circuit court found Amberwinds was "virtually the same entity" as ISI and was owned by the same two men with

---

3. Contrary to the written contracts, the parties agreed to a purchase price of $511,000 for the 40–acre parcel, with each beneficiary receiving $73,000 in cash at closing.

whom LeGrand negotiated—Jones and Perry. In March 2006, the beneficiaries learned of the sale to Amberwinds. Two of the beneficiaries testified they would not have sold their interests had they known about the contracts between LeGrand and ISI.

ISI never closed under its contract for the purchase of the Wellington tract. LeGrand could not find another buyer before the promissory notes to the beneficiaries became due on December 31, 2006. As a result, LeGrand defaulted on the notes and was forced to reconvey the beneficiaries' interests in the Wellington tract and distribute to them $138,000 in profits from the sale of two Echo Tango lots—one in 2006 and one in 2008.

Three beneficiaries of the estate brought suit, both individually and "as a class of beneficiaries," against LeGrand for breach of fiduciary duty. The probate court found LeGrand breached his fiduciary duty and awarded $69,051 in damages to all the beneficiaries of the estate. In arriving at this award, the court stated it would not measure damages by the difference between what LeGrand paid the beneficiaries for the 40–acre parcel—$511,000—and the amount Amberwinds paid for it—$810,000. Instead, the court began with the amount LeGrand cleared from the sale to Amberwinds after he made closing and title clearance payments—$207,051.[4] The court then subtracted from this amount the distributions LeGrand subsequently paid to the beneficiaries from the sale of the two Echo Tango lots—$138,000. These reductions left a final award of $69,051.

Both LeGrand and the beneficiaries appealed to the circuit court. The beneficiaries argued the probate court erred because it measured damages by what LeGrand cleared from the sale to Amberwinds, and it deducted $138,000 in Echo Tango proceeds from the award. The circuit court agreed and increased the award to $289,924 because (1) the measure of

---

4. At the Amberwinds closing, LeGrand received $810,000 but paid $602,955, which included: (1) $593,872 to pay off the mortgage on the 40–acre parcel; (2) $6,576 to pay a judgment against Clark Lowther; (3) $1,257 to pay a creditor's claim against the estate; and (4) $1,250 in attorney's fees. After LeGrand was credited $6.24 for paying the prorated real estate tax in advance, LeGrand cleared $207,051 from the sale.

damages should have been what the beneficiaries would have earned but for LeGrand's actions—$299,000—and (2) the Echo Tango distributions should not have been considered in calculating the award because Mr. Lowther equitably owned a fifty-percent interest in Echo Tango, which entitled the beneficiaries to any proceeds after his death. However, the circuit court affirmed the probate court's subtraction of $9,076 for payments made at the closing.[5] In his cross-appeal, LeGrand argued the probate court erred in finding he breached a fiduciary duty to the beneficiaries. The circuit court disagreed and affirmed the probate court's ruling.

## II. Breach of Fiduciary Duty

LeGrand contends the circuit court erred in affirming the probate court's holding that he breached a fiduciary duty to the beneficiaries. LeGrand makes three arguments as to why he should not be liable to the beneficiaries: (1) he had no fiduciary duty to them because the transactions took place outside the estate administration process; (2) he did not breach a fiduciary duty to the beneficiaries; and (3) any duty he breached did not proximately cause the beneficiaries' damages.

To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately resulting from the wrongful conduct of the defendant. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012). The existence of a fiduciary duty is a question of law for the court. *See Vortex Sports & Entm't, Inc. v. Ware*, 378 S.C. 197, 207, 662 S.E.2d 444, 450 (Ct.App. 2008) (citing *Clearwater Trust v. Bunting*, 367 S.C. 340, 346, 626 S.E.2d 334, 337 (2006)). Pursuant to the probate code, a personal representative owes a fiduciary duty to all beneficiaries of the estate. S.C.Code Ann. § 62–3–703(a) (2009) (stat-

---

5. Except for the $593,872 mortgage payment, the court subtracted the payments and the credit listed in the above footnote from the award—$9,076 in total. The court did not consider the mortgage payment when determining the award because (1) LeGrand voluntarily mortgaged the 40–acre parcel instead of purchasing with cash, and (2) the $585,000 mortgage loan exceeded the purchase price by $74,000, and the beneficiaries received none of the excess funds.

ing "[a] personal representative is a fiduciary" and must "use the authority conferred upon him ... for the best interests of successors to the estate"); *see also Ex parte Wheeler v. Estate of Green,* 381 S.C. 548, 555, 673 S.E.2d 836, 840 (Ct.App.2009) ("A personal representative is a fiduciary under this state's probate code."); *Witherspoon v. Stogner,* 182 S.C. 413, 415, 189 S.E. 758, 759 (1937) ("That a fiduciary relationship exists between each heir or beneficiary of an estate and the administratrix thereof is fundamental."). Subsection 62–3–703(a) states a personal representative has the "duty to settle and distribute the estate ... as expeditiously and efficiently as is consistent with the best interests of the estate" and the "successors to the estate." If the personal representative improperly exercises his power in connection with the estate, he is "liable to interested persons for damage or loss resulting from breach of his fiduciary duty." S.C.Code Ann. § 62–3–712 (2009).

## A. Acting in Capacity as Fiduciary

LeGrand first contends the fiduciary duty he had to the beneficiaries did not apply when he purchased their interests because he distributed the properties to them in his fiduciary capacity, and then purchased the individually-owned properties from them in a personal capacity. Thus, LeGrand argues the transactions occurred outside of the administration of the estate and thus were not subject to a fiduciary duty.

LeGrand's argument focuses on whether he had a fiduciary duty to the beneficiaries when he closed his purchase of the 40–acre parcel from them in December 2005. We believe LeGrand defines the issue too narrowly. LeGrand concedes he had a fiduciary duty to the beneficiaries when he was negotiating to purchase their interests in the summer of 2005 and when the beneficiaries signed their contracts to sell their interests in October 2005. This duty required him to disclose information affecting the value of the beneficiaries' interests in the estate before he could negotiate to purchase those interests. *See Pitts v. Jackson Nat'l Life Ins. Co.,* 352 S.C. 319, 335, 574 S.E.2d 502, 510 (Ct.App.2002) (noting a duty to disclose arises from a preexisting, definite fiduciary relationship between the parties); *Moore v. Moore,* 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct.App.2004) (stating "[p]arties in a

fiduciary relationship must fully disclose to each other all known information that is significant and material, and when this duty to disclose is triggered, silence may constitute" a breach of that duty (citation omitted)).

LeGrand and ISI began negotiating the sale of the 40–acre parcel and the Wellington tract in early 2005. Through these negotiations, LeGrand acquired information concerning the value of the properties that he could not have known except by virtue of his position as personal representative. On the other hand, the beneficiaries could not have learned this information unless LeGrand disclosed it to them. The beneficiaries' ability to accurately assess the value of the properties, and thus determine the price they were willing to accept, depended on the information available to them at that time. Nevertheless, LeGrand began negotiations with the beneficiaries in the summer of 2005, and they agreed on a purchase price and signed the contracts to sell their interests to LeGrand in October 2005. Because his negotiations and contracts with ISI affected the value of the beneficiaries' interests, LeGrand's fiduciary duty required him to disclose this information to them when he negotiated to purchase their interests and when the beneficiaries signed the contracts to sell their interests to him.

### B. Breach of Fiduciary Duty

LeGrand also argues that even if he had a fiduciary duty at the relevant time, he did not breach this duty because (1) there was no contract with ISI when the beneficiaries signed their contracts and when LeGrand closed on his purchase of the 40–acre parcel, (2) ISI walked away from the contracts, and Amberwinds—who he argues is not an assignee or the same entity as ISI—purchased the 40–acre parcel, and (3) he did not profit from the transaction with Amberwinds. These three arguments challenge the factual findings of the circuit court. We reject these arguments and affirm because evidence in the record supports these findings and the finding that LeGrand breached his fiduciary duty of disclosure. *See Jordan v. Holt,* 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005) (stating the trial court's findings in a breach of fiduciary duty action will be upheld unless they are "without evidentiary support").

## C.  Proximate Cause

■   LeGrand argues any breach of his fiduciary duty did not proximately cause the beneficiaries' damages.   We find, however, there is evidence to support the circuit court's finding of proximate cause.   *See Jordan,* 362 S.C. at 205, 608 S.E.2d at 131.  Three of the beneficiaries testified they relied on LeGrand's denial of existing contracts when they decided to sell their interests, and two testified they would not have gone through with the sale had they known about the contracts.

LeGrand also contends the beneficiaries, with full knowledge of the sale to Amberwinds in March 2006, ratified the transaction by electing to receive proceeds from Echo Tango sales under the terms of the notes, instead of rescinding the transaction and suing for damages.  This issue, however, is not preserved for our review because LeGrand never made this argument to the probate court.  *See Ulmer v. Ulmer,* 369 S.C. 486, 490, 632 S.E.2d 858, 860 (2006) ("In reviewing an appeal from the probate court, the circuit court must apply the same rules of law as an appellate court would apply."); *Whaley v. CSX Transp., Inc.,* 362 S.C. 456, 482, 609 S.E.2d 286, 299 (2005) (finding issue not preserved because it was not raised to and ruled upon by the trial court).

## III.  Calculation of Damages

■   LeGrand argues the circuit court erred in modifying the probate court's award of damages.  First, he contends the probate court correctly based damages on the amount Le-Grand cleared from the sale to Amberwinds, instead of the difference between what LeGrand paid the beneficiaries for the 40–acre parcel—$511,000—and the amount Amberwinds paid for it—$810,000.  We disagree.  Generally, the measure of damages in a tort case is "the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury."  *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 312, 594 S.E.2d 867, 874 (Ct.App.2004); *see also Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) ("The goal [of compensatory damages] is to restore the injured party

... to the same position he or she was in before the wrongful injury occurred."); *Haselden v. Davis,* 353 S.C. 481, 486, 579 S.E.2d 293, 296 (2003) (Burnett, J., dissenting) (explaining the "central tenet of compensatory damages" is "to make an injured person whole by placing him in the position enjoyed prior to the injury"). Thus, the correct measure of damages in this case is the amount that will compensate the beneficiaries for the loss proximately caused by LeGrand's failure to disclose. *See* S.C.Code Ann. § 62–3–712 (2009) (stating damages for a personal representative's breach of fiduciary duty are calculated pursuant to subsection 62–7–1002(a) of the South Carolina Code (2009), which provides recovery for (1) the amount needed to restore the asset's value to what it would have been but for the breach, or (2) "the profit the [fiduciary] made by reason of the breach," whichever is greater); Restatement (Third) of Trusts § 100 (2012) (stating one of the objectives in awarding damages for breach of fiduciary duty is to make the beneficiaries whole by restoring what they would have had if the breach had not occurred). Here, the evidence supports the circuit court's finding that LeGrand purchased the 40–acre parcel from the beneficiaries for $511,000 when he knew its value was $810,000. Thus, we affirm the circuit court because but for LeGrand's breach, the beneficiaries would have earned an additional $299,000.

■ Second, LeGrand argues the probate court correctly subtracted from the damages award $138,000 in Echo Tango proceeds previously paid to the beneficiaries because the payments were made pursuant to the overall deal negotiated between LeGrand and the beneficiaries. The circuit court found the Echo Tango proceeds should not be considered in calculating the award because Mr. Lowther owned an equitable one-half interest in Echo Tango prior to his death, which entitled the beneficiaries to any proceeds after his death. LeGrand argues, however, Mr. Lowther held no interest in Echo Tango upon his death because it was titled solely in LeGrand's name and they never reached an agreement regarding joint ownership of the property. Therefore, LeGrand claims the beneficiaries were not entitled to the profits except under the terms of the notes, and the circuit court erroneously overruled the probate court's determination of damages.

There is evidence in the record, however, to support the circuit court's finding that Echo Tango was part of Mr. Lowther's estate. First, the provision in the beneficiaries' contracts that they must quitclaim their rights in Echo Tango supports the contention that the beneficiaries were entitled to an equitable interest in Echo Tango; otherwise, the provision would be useless. When asked in a deposition why the contracts contained this provision, LeGrand responded, "I was buying them out of Echo Tango.... There never was any question that they were going to get fifty percent of the proceeds out of Echo Tango." When asked why he thought this, LeGrand admitted the beneficiaries were entitled to the proceeds before he defaulted on the notes, and stated, "I was going to give it to them. I felt like I owed it to them."

Second, in a pretrial hearing, LeGrand testified that "while the title to Echo Tango was in [his] name, it's undisputed that [he] and [his] dad owned it together 50/50." This is also consistent with a 2002 agreement signed by LeGrand, stating, in relevant part:

> This is to acknowledge that the following individuals are the equitable and true owners of the below-described interest in Echo Tango property located in the Chechessee Community in Beaufort County. Acknowledging this ownership interest, title, however, shall be in the name of E. LeGrand Lowther for business purposes.

> E. LeGrand Lowther          50% ownership
> C.E. Lowther                50% ownership

> All net proceeds from any sales shall be divided according to the above interests.[6]

Third, LeGrand's counsel admitted at trial there was "some legitimacy to the [beneficiaries'] contention" that they had a

---

6. LeGrand contends evidence from the deposition, pretrial hearing, and agreement is not a legitimate part of the record, and the circuit court erred in relying on it. However, LeGrand never raised this issue to the circuit court, even though the parties extensively discussed the evidence during pretrial hearings. Accordingly, we find the issue is not preserved for this court's review. *See Ulmer*, 369 S.C. at 490, 632 S.E.2d at 860 ("In reviewing an appeal from the probate court, the circuit court must apply the same rules of law as an appellate court would apply."); *Talley v. S.C. Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 487, 347 S.E.2d 99, 101 (1986) (stating issues may not be raised for the first time on appeal).

one-half interest in Echo Tango because LeGrand "had reached this agreement with his father before he passed." And later at trial, when asked what would have happened to Echo Tango proceeds had none of the transactions taken place, LeGrand answered as follows:

A. I would've given them 50 percent of the proceeds out of the sale of it.

Q. Why would you have done that?

A. Because it was my dad's wishes.

Q. Would you characterize [it] as an understanding and agreement that you had with your father?

A. Agreement, understanding. That's what he wanted
. . . .

Finally, Mr. Lowther's will devised a fifty-percent interest in Echo Tango to the beneficiaries, which shows he believed he owned an interest in the property.

Based on the evidence discussed above, we affirm the circuit court's award of damages and agree the probate court erred in reducing the award by $138,000 because the beneficiaries were entitled to a fifty-percent equitable interest in Echo Tango.[7]

## IV. Award of Damages

■ Finally, LeGrand claims the circuit court erred in affirming the probate court's award of damages in favor of all the beneficiaries, when only three were parties in this case. However, when the probate court granted judgment in favor of all seven beneficiaries, LeGrand never raised this issue to the probate court through a Rule 59(e), SCRCP, motion. Therefore, this argument is not preserved. *See In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct.App.1998) (holding when an order grants certain relief not previously contemplated or presented to the probate court, the aggrieved

---

7. Additionally, LeGrand argues the probate court erred in allocating equal damages to each of the beneficiaries when they previously received proceeds of Echo Tango sales in unequal amounts. Because we find the circuit court correctly disregarded the proceeds in calculating damages, we need not address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues on appeal when disposition of a prior issue is dispositive).

party must file a Rule 59(e), SCRCP, motion to alter or amend the judgment to preserve the issue for appeal).

## V. Conclusion

For the reasons set forth above, the decision of the circuit court is **AFFIRMED**.

GEATHERS and LOCKEMY, JJ., concur.