# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jacquelin S. Bennett and Kathleen S. Turner as Personal Representatives of the Estate of Jacquelin K. Stevenson, Petitioners,

v.

Estate of James Kelly King and Genevieve S. Felder, Respondents.

Appellate Case No. 2020-000901

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Tamara C. Curry, Probate Court Judge

---

Opinion No. 28099
Heard October 13, 2021 – Filed June 15, 2022

---

## REVERSED AND REMANDED

---

Daniel Scott Slotchiver, Stephen Michael Slotchiver, and Andrew Joseph McCumber, all of Slotchiver & Slotchiver, LLP, of Mount Pleasant, for Petitioners.

George R. McElveen, III, of McElveen & McElveen, of Columbia, for Respondents.

**JUSTICE HEARN:** In this case we decide whether the broad powers granted to a personal representative in a will extend to distributions under the will's residuary clause, and whether the personal representatives' proposed distribution constituted a breach of their fiduciary duty. The probate judge, the circuit court, and the court of appeals all determined the broad powers did not govern distributions of the residual estate. Also, the court of appeals affirmed the probate court's finding that the personal representatives' conduct constituted a breach of fiduciary duty. We hold the court of appeals erred and reverse.

## FACTS AND PROCEDURAL HISTORY

This is a dispute between two daughters and a stepdaughter of the testatrix, Jacquelin K. Stevenson, who died on September 17, 2007. She was survived by six children: four from her marriage to Thomas Stevenson, a son by a former marriage, and a stepdaughter.[1] Thomas Stevenson predeceased her in 1988, leaving her as the sole beneficiary of two trusts created by his will. The residual beneficiaries of the two trusts were her children by Stevenson—two sons, Thomas Stevenson III and Daniel Stevenson II, and two daughters, Kathleen Stevenson Turner and Jacquelin Stevenson Bennett. She died with a Last Will and Testament dated October 21, 1996, which devised all real property in her estate to her four children by Stevenson and made bequests of $400,000 to her son by her former marriage, James Kelly King, and her stepdaughter, Genevieve Stevenson Felder.[2] While the step-children were left monetary bequests, the two daughters of the marriage received a house on Wadmalaw Island, South Carolina, and the two sons of the marriage were left a home located in Lake Summit, North Carolina. In addition to the Wadmalaw Island and Lake Summit properties, the testatrix also owned two properties not mentioned in the will: one lot on Edisto Island ("Bailey's Island") and another in Mount Pleasant

---

[1] The testatrix married her second husband, Thomas Stevenson, when she was 24 years old, with each party bringing a child from a former marriage into the union.
[2] Genevieve Felder, the Respondent, was 12 years old at the time of her father's second marriage.

("Paradise Island").[3] This dispute centers around the Lake Summit property, used by the family as a vacation home and rental.[4]

This litigation concerns only the two daughters of Thomas Stevenson by the testatrix and his daughter by a former marriage. The testatrix's two sons by Stevenson—Thomas and Daniel—stole millions from the estate while co-trustees from 1996 to 2006, thereby forfeiting any rights they had to take under their mother's will and leaving Jacquelin and Kathleen as the personal representatives.[5] Her son by a former marriage is not involved in this action because his interest in the residuary estate was bought out by his two half-sisters and his stepsister.

The theft by Thomas and Daniel Stevenson left the estate with insufficient monies remaining to fund the specific bequests of $400,000 each to the two stepchildren of the marriage. Further, the bequest of the Lake Summit property to the two sons failed, sending it to the residuary, and because no amendment by codicil preceded the testatrix's demise, the after acquired properties of Bailey's Island and Paradise Island passed through the residuary as well. The residuary clause provided that "[a]ll the rest, residue and remainder of my property and estate . . . I give, devise and bequeath to Kathleen S. Turner, Jacquelin S. Bennett, Thomas C. Stevenson, III, Daniel R. Stevenson, James Kelly King, and Genevieve S. Felder in equal shares." The probate court, the circuit court, and the court of appeals all interpreted this to mean in equal ownership interests rather than equal monetary values.

Just as the language of the residuary clause is relevant to the resolution of this dispute, so is section 10 of the will, which sets forth the powers of the personal representatives and expressly states the testatrix's intention to give broad discretion and flexibility to her personal representatives. Section 10.6 grants the personal representatives power to make distributions, "[w]ithout the consent of any beneficiary . . . in cash or in specific property, real or personal, or an undivided

---

[3] The Lake Summit property had been in the family for decades while the Bailey's Island and Paradise Island properties were acquired after the execution of the will.

[4] At the time the property was acquired by the Stevensons, Petitioners were minor children and Genevieve was 25 or 26 years old and married.

[5] The facts related to Thomas and Daniel's theft can be found in this Court's opinion in *Bennett v. Carter*, 421 S.C. 374, 378-79, 807 S.E.2d 197, 199-200 (2017).

interest, or partly in cash and partly in such property, . . . without making pro-rata distributions of specific assets."

As personal representatives, Petitioners had the residuary properties appraised. Bailey's Island appraised for $725,000; Lake Summit for $1,100,000; and Paradise Island for $390,000. Petitioners then proposed a distribution of these three properties, splitting the Lake Summit property between themselves and allocating the remaining properties between the three parties, with Respondent receiving the majority of the Bailey's Island property. The appraised values assigned to the respective properties are not in dispute, nor is the fact that the proposed distributions are of equal monetary value; rather, only the manner in which Petitioners propose to allocate the properties is contested. Specifically, Respondent objects to not receiving an equal share of the Lake Summit property.

Respondent argued before the probate court that the proposed distribution was not fair and equitable, and that Petitioners, as personal representatives, were required to consider certain intangibles in dividing the properties, such as the fact that the Lake Summit property earned rental income and could be used, while the Bailey's Island and Paradise Island properties were unimproved lots. Petitioners, conversely, argued that these intangibles were taken into account in the appraisal of the properties; that it was stipulated that the appraisal was correct; that the proposed distribution was equal; and, that section 10.6 of the will afforded them broad powers to distribute the assets of the estate.

In its order, the probate court ruled the three parties should each receive an equal ownership interest in all three pieces of property. While the court noted Petitioners' argument that the terms of the will gave them broad powers to distribute the properties so that each received an equal monetary share, section 10.6 of the will was not even mentioned in the order. Instead, the court relied on the residuary clause and held that the language the property should be distributed "in equal shares" meant each party should receive an equal ownership interest. In their motion to alter or amend, Petitioners argued, *inter alia*, that the specific terms of section 10.6 of the will afforded them broad discretionary powers to distribute the residuary assets of the estate. In its order denying the motion to reconsider, the probate court again relied on the language of the residuary clause and held that the testatrix's intent was to distribute property passing through the residuary estate in equal ownership shares. With respect to sections 10.1 and 10.6 of the will, the court held the broad powers granted to the personal representatives therein applied *only* to distributions of a specific asset and did not govern distributions under the residuary clause.

On appeal, the circuit court upheld the order of the probate court, accepting Respondent's argument that notwithstanding the broad powers granted to the personal representatives by the will, Petitioners were required to treat all beneficiaries equitably and fairly and to include "non-economic considerations such as sentimental value, utility, and other intangible factors" in their proposed distribution. Specifically, the circuit court held that Petitioners' proposed distribution "serves no apparent purpose other than to favor themselves, allowing them to 'cherry pick' among the assets at the expense of the remaining beneficiary, which fails the test of equity and good faith." The circuit court upheld the order of the probate court on a breach of fiduciary duty by Petitioners.

Petitioners appealed to the court of appeals, which affirmed in an unpublished opinion. *Bennett v. Est. of James Kelly King*, Op. No. 2019-UP-412 (S.C. Ct. App. filed Dec. 31, 2019). The court of appeals held there was evidence in the record that the personal representatives' proposed allocation of the residuary estate into shares of equal monetary value "would be inequitable because there is no reasonable purpose for their proposal." Additionally, the court of appeals held that "[a] plain reading of the Will supports the probate court's contention that Article 10.6 referred to the Will's grant of specific property, not the Residuary Estate." We granted certiorari and now reverse.

## ISSUE

Whether the court of appeals erred in affirming the probate court's decision to reject the personal representative's proposal and instead dividing the Lake Summit property in pro-rata ownership shares?[6]

## STANDARD OF REVIEW

Throughout this litigation, the parties have assumed this was an action at law and that an "any evidence" standard of review controlled. However, an appellate court is not bound by the parties' characterization of an action. Moreover, the circuit court clearly reviewed this case de novo, making findings of fact based on its own view of the evidence. Thereafter, the court of appeals viewed this as a will construction case and applied the "any evidence" standard. We acknowledge that ordinarily, an action to construe a will is an action at law, and appellate review is

---

[6] Petitioners raise multiple issues on appeal, but we restate the dispositive issue into a single question before the Court.

limited to correcting errors of law. *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005); *Kemp v. Rawlings*, 358 S.C. 28, 34, 594 S.E.2d 845, 848 (2004). However, an action for breach of fiduciary duty is either an action at law or in equity depending on the remedy sought. *Verenes v. Alvanos*, 387 S.C. 11, 18, 690 S.E.2d 771, 774 (2010). In *Verenes*, we said:

> Characterization of an action as equitable or legal depends on the appellant's "main purpose" in bringing the action. The main purpose of the action should generally be ascertained from the body of the complaint. However, if necessary, resort may also be had to the prayer for relief and any other facts and circumstances which throw light upon the main purpose of the action.

*Verenes*, 387 S.C. at 16, 690 S.E.2d at 773 (citations omitted) (internal quotation marks omitted); *see also Bell v. Mackey,* 191 S.C. 105, 119-20, 3 S.E.2d 816, 822 (1939) ("[T]he nature of the issues as raised by the pleadings or the pleadings and proof, and character of relief sought under them, determines the character of an action as legal or equitable."). Therefore, the law is clear that an action at law can be transformed into an action in equity if the relief sought is equitable.

Discerning the correct standard of review in this case requires us to determine whether Respondent's objection to the proposed distribution turns on the construction of the will, or whether she merely prefers an alternate distribution in the name of equity. We believe it is the latter. It is clear that Respondent did not seek money damages but instead wanted a share in a specific piece of property. The will needs no "construction" because it's meaning is clear. This is a proceeding to determine whether the personal representatives have fulfilled their duty to distribute property to devisees under a clearly worded will. The dispute is over the personal representatives' distribution of specific residuary property, not over what the words in the will mean. Further, before the probate court, Respondent argued "principles of equity control" and likened this action to a partition action, which under our jurisprudence, sounds in equity. *Laughon v. O'Braitis*, 360 S.C. 520, 524, 602 S.E.2d 108, 110 (Ct. App. 2004); *see also Wolf v. Hayes*, 161 S.C. 293, 294, 159 S.E. 620, 621 (1931); *Windham v. Howell*, 78 S.C. 187, 191, 59 S.E. 852, 853 (1907) ("It is settled by many cases in this state that this [partition action] is an equity cause."). Respondent's claim could also be viewed as similar to one seeking to impose a constructive trust because she requests an order requiring Petitioners to deed the properties in a manner that satisfies equity. Accordingly, we believe the correct standard of review is de novo.

However, in the final analysis, the result we reach is not driven by the standard of review, because under either the more limited "any evidence" standard or the more generous de novo standard, Respondent's claims fail.[7] As we will explain more fully below, all the courts which heard this matter erred by elevating one provision of the will over another instead of construing them together, in harmony with one another, and all their decisions were infected by a common error of law—that Section 10.6 of the will applied only to specific devises and not to the residuary clause. Additionally, all of the courts essentially concluded that the proposed distribution was not fair, and thus constituted a breach of fiduciary duty. Therefore, in this particular case, the standard of review, while intellectually interesting, does not matter. *See generally McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("Appellate courts recognize—or at least they should recognize—an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter.").

## DISCUSSION

The touchstone of our analysis must begin with discerning the intention of the testatrix. Our task is not to consider the will piecemeal, nor to elevate one provision above another, but rather to give due weight to all the language in the will, harmonizing the will's provisions with one another. *Epworth Children's Home v.*

---

[7] We disagree with the dissent that we have abandoned the standard of review in will construction cases. This case is before us in an odd posture, because the alleged "breach" of fiduciary duty has not taken place. Under our case law, a plaintiff in a breach of fiduciary duty action must prove (1) the existence of a fiduciary duty owed to the plaintiff, (2) a breach of that fiduciary duty by the defendant, and (3) damages proximately flowing from the breach. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335-36, 732 S.E.2d 166, 173 (2012). Here, the distribution proposed by Petitioners was, by definition, a proposal, and the distribution has not occurred. Instead, Respondent's plea is simply one (1) to enjoin an allegedly inequitable distribution and (2) to order another, more equitable, distribution. That plea sounds in equity. Overall, the standard of review will remain "any evidence" in the vast majority of cases involving the construction of language in a will, but here, because the language of the will is not in dispute and because Respondent requests an award of a specific piece of property, we believe the tenets of *Verenes* require us to use a de novo standard.

*W.F. Beasley*, 365 S.C. 157, 166, 616 S.E.2d 710, 715 (2005); *Lemmon v. Wilson*, 204 S.C. 50, 69, 28 S.E.2d 792, 800 (1944) ("An interpretation that fits into the whole scheme or plan of the will is most apt to be the correct interpretation of the intent of the testator."). Moreover, it is black letter law that when a portion of a will is invalid, it does not invalidate other provisions. *See* 96 C.J.S. *Wills* § 964 (2021). Therefore, simply because some bequests go through the residuary clause, section 10.6 remains in effect. Accordingly, the residuary clause of the will should not be read in isolation nor should it be elevated above other provisions of the will. Section 10.6 of the will is equally important and must be honored.

Section 10.6 affords the personal representatives broad powers to carry out the terms of the will. Specifically, that provision empowers the personal representatives to make distributions under the will "without the consent of any beneficiary" and "without making pro-rata distributions of specific assets." There is nothing in the will nor in our jurisprudence that states these broad powers are limited to specific bequests. Nevertheless, the probate court held section 10.6 governed only the distribution of specific assets, and did not apply to the residuary estate. This conclusion is exactly backwards. The personal representatives were bound to carry out the specific bequests in the will and, despite the broad grant of authority in section 10.6, they had no discretion to alter them. Rather than *not* applying to the distribution of the residuary estate, it is clear this is precisely where those broad powers could be exercised. Indeed, section 10.6 would be meaningless if the broad powers of the personal representatives did not apply to the residuary estate. This error of law by the probate court, affirmed by the circuit court and the court of appeals, negated the intent of the testatrix to afford broad authority to the personal representatives and infected the entire proceedings. Instead of elevating the provisions of the residuary clause over section 10.6, the two sections of the will should be harmonized. When that is done, it is clear the personal representatives had the power to distribute the residuary estate, without the consent of any beneficiary, and without making pro-rata distributions of specific assets. This is precisely what they did, and absent a breach of fiduciary duty, their proposed distribution should be upheld.[8]

---

[8] We also disagree with the court of appeals' conclusion that because title to the property immediately vested upon the decedent's death, Felder already had title, and therefore, the personal representatives were required to award her a pro-rata share of the Lake Summit property. This conclusion ignores the fact that where title vests is

Nor can we accept the view that the probate court's finding of a breach of fiduciary duty must be upheld under the limited standard of review posited by the dissent. Even assuming the "any evidence" standard of review applied to this matter, Respondent's claims fail. The probate court determined the proposed distribution was not equitable, and the circuit court affirmed by improperly placing the burden of proving the reasonableness of the proposed distribution on Petitioners, stating:

> On its face, the proposed distribution scheme is not related to any apparent reasonable purpose. The unequal distribution of Bailey's Island can only be interpreted so as to allow the Personal Representatives to retain Lake Summit for themselves and exclude Respondent. The record is devoid of any assertion or explanation as to what other purpose the proposed distribution scheme might serve, or why it is in fact "reasonable."

The court of appeals agreed with the probate court that section 10.6 did not apply to the residuary estate, stating that "[a] plain reading of the Will supports the probate court's contention that [Section] 10.6 referred to the Will's grant of specific property, not the Residuary Estate." While, like the probate and the circuit courts, the court of appeals did not specify the precise fiduciary duty breached by Petitioners, it nevertheless held "there is evidence in the record that the Personal Representatives' proposed allocation of the Residuary Estate into shares of equal monetary value would be inequitable because there is no reasonable purpose for their proposal," thus perpetuating the error in reversing the burden of proof in this case.

---

subject to the personal representative's powers in administering the estate. *See* S.C. Code Ann. § 62-3-101 (2022) (noting that in a testate matter, titled "devolves to the persons to whom it is devised by his last will" subject to "the purposes of administration, particularly the exercise of the powers of the personal representative . . . ."). Additionally, the court of appeals erred in concluding the parties' prior settlement agreement eliminated the personal representatives' discretion under the will. Rather, the parties simply agreed that if they could not reach an agreement as to the last remaining properties, they would return to the probate court. This is exactly what occurred, as the personal representatives sought approval of their proposed distribution. While Felder disagreed with the proposed allocation, nothing in the agreement purported to nullify the provisions in the will, including Section 10.6.

Even assuming there is at least some evidence supporting the probate court and that the more limited standard of review applied—both of which we reject—that finding would not be entitled to deference because it was infected by the error of law that section 10.6 of the will applied only to specific bequests and not to the residuary estate.[9] Section 10.6, which should be given effect and harmonized with the other provisions of the will, clearly affords the personal representatives broad authority to make distributions of specific property without regard to the consent of the beneficiary and without making pro-rata distributions. The burden was on Respondent to show that the proposed distribution was unfair or inequitable, which she did not do and likely could not do in light of her stipulation that the proposed distribution was of equal monetary value. As beneficiary, she was entitled to nothing more than a monetary equal distribution of the residual estate. We also note that the behavior exhibited by personal representatives found to have breached their fiduciary duty looks nothing like what we see here. *See generally Turpin v. Lowther*, 404 S.C. 581, 745 S.E.2d 397 (Ct. App. 2013) (finding a breach of fiduciary duties where personal representative of estate secretly negotiated with third-party for the purchase of property in which beneficiaries had an interest); *Moore v. Benson*, 390 S.C. 153, 163, 700 S.E.2d 273, 278-79 (Ct. App. 2010) (finding a breach of fiduciary duty where trustee secretly looted her father's retirement account and used the funds to purchase his real property). Conversely, where a personal representative acts in good faith, the distribution to beneficiaries is likely to be upheld. *See generally Wheeler v. Est. of Green*, 381 S.C. 548, 673 S.E.2d 836 (Ct. App. 2009) (holding personal representative did not breach her fiduciary duty to beneficiaries by accepting one offer for real estate rather than accepting a subsequent higher offer containing contingencies).

---

[9] We disagree with the dissent that it is incorrect to conclude that the probate court's breach of fiduciary duty finding was infected by an error of law. While it is true that the original probate court order did not mention section 10.6, Petitioners clearly raised that provision to the probate court and subsequently filed a motion to reconsider once the court failed to address it. Indeed, the original order's silence regarding section 10.6 bolsters our position that the court erred because it failed to address one of the key provisions in the will. Moreover, once the court actually considered section 10.6 in an amended order, it did so erroneously by concluding that provision did not apply.

We also cannot accept the argument that sentimental value and other intangibles should be permitted to defeat the proposed distribution because this would place an untenable burden on personal representatives and provide an unworkable framework going forward. In the face of the broad authority granted to the personal representatives by section 10.6, a beneficiary should not be heard to object to a proposed distribution which is equal in terms of monetary value merely because he or she does not like it and would prefer a different distribution. Moreover, even if it were proper to consider the sentimental value and "other intangibles" urged by Respondent, it is difficult to see how such an analysis would benefit Respondent, who was an adult when the prized Lake Summit property was even acquired. Petitioners, on the other hand, as children of the Stevenson marriage, grew up spending summers at Lake Summit.

Therefore, we reverse the court of appeals and remand to the probate court to approve the distribution proposed by the Petitioners.

**REVERSED AND REMANDED.**

**BEATTY, C.J., FEW and JAMES, JJ., concur. KITTREDGE, J., dissenting in a separate opinion.**

**JUSTICE KITTREDGE:**  As a practical matter, the entirety of this dispute centers on who receives the Lake Summit vacation home and adjoining lots in Henderson County, North Carolina.  As a legal matter, many twists and turns are encountered in answering the question.  There is much I agree with in the Court's majority decision.  I agree with the majority that the Will did grant the personal representatives broad authority to distribute the residuary estate and that, as the majority acknowledges, "absent a breach of fiduciary duty, their proposed distribution should be upheld."  I respectfully dissent on the ultimate outcome because, unlike the majority, I am firmly persuaded there is evidence to support the probate court's finding that the personal representatives breached their fiduciary duty.  As a result, I would affirm the decision of the court of appeals as modified.

## I.

Jacquelin K. Stevenson died in 2007.  The testatrix's Will named her daughter, Petitioner Kathleen S. Turner, and her son, Thomas Stevenson III, as co-personal representatives of her estate.  The Will named six beneficiaries—the testatrix's five biological children and one stepchild.  Petitioners and Respondent are half-sisters.  It was the intent of the testatrix for her two biological daughters, Petitioners Turner and Jacquelin S. Bennett, to receive the Wadmalaw Island property, valued at approximately $1.5 million.  The other prized asset, the Lake Summit property, was devised to the biological sons from her second marriage, Thomas and Daniel Stevenson.  The Lake Summit vacation home and adjoining lots were valued at approximately $1.1 million.  The testatrix's biological son from her first marriage, James Kelly King, and her stepchild, Respondent Genevieve S. Felder, received monetary bequests.  Respondent Felder was bequeathed $400,000.

After the testatrix executed her Will, she acquired two additional unimproved properties.  These properties are known as the Bailey's Island property and the Paradise Island property.  Because these two properties were acquired after the Will's execution, these properties passed pursuant to the residuary clause.

The testatrix's carefully crafted estate plan quickly went awry.  As the majority notes, sons Thomas and Daniel raided the estate and stole millions of dollars.  Not only was the testatrix's estate plan thwarted, her sons were ousted, which included the removal of Thomas Stevenson III as a personal representative.  Petitioner Bennett was substituted as a co-personal representative.

Petitioners received the valuable Wadmalaw Island property. According to the majority opinion, Respondent Felder did not receive her $400,000 bequest due to the sons' looting of the estate. Moreover, because the sons were ousted, they were prohibited from inheriting the Lake Summit property. The Lake Summit, Bailey's Island, and Paradise Island properties passed through the residuary.

When the dust settled in the probate court, there were three beneficiaries—Petitioners, who served as the personal representatives, and Respondent. Petitioners, as the personal representatives, awarded themselves jointly the Lake Summit property and awarded Respondent a greater share of the Bailey's Island property to make up the difference. Petitioners also awarded themselves an interest in the Bailey's Island and Paradise Island properties, splitting the Paradise Island property equally between Petitioners and Respondent. It also appears Petitioners proposed to pay Respondent an additional sum of money to, as they contended, equalize the overall division.

Respondent argued that Petitioners' self-dealing, under these circumstances, amounted to a breach of their fiduciary duty. The probate court agreed with Respondent, finding Petitioners proposed division would breach their fiduciary duty. As a result, the probate court ordered an equal distribution of all residuary assets, including the Lake Summit property. On appeal, the circuit court and court of appeals affirmed, determining that the finding of breach of fiduciary duty was supported in the record. *Bennett v. Estate of King*, Op. No. 2019-UP-412 (S.C. Ct. App. filed Dec. 31, 2019). I agree with that assessment.

## II.

Before addressing the breach of fiduciary duty finding, I briefly note my agreement with the majority opinion on the other issues. Of key significance are the broad discretionary powers granted to the personal representatives by Article 10.6 of the Will. This broad authority most assuredly extended to the residuary estate distributions. In this regard, the personal representatives generally had the authority to distribute the residuary assets as they saw fit, including a non-pro rata distribution. This broad authority, however, had limits. The parameters of those limits are defined by the fiduciary duty the law imposes on personal representatives to act as fiduciaries for all beneficiaries. It is on the breach of fiduciary duty issue, as well as the appropriate standard of review under which to review that issue, where the majority and I part company.

## A.

My first concern with the majority opinion is its haste to cast aside the "any evidence" standard of review. Petitioners acknowledge in their brief that "[t]his case involves the construction of a will[,] which is an action at law." *See Epworth Child.'s Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005) ("An action to construe a will is an action at law."); *Kemp v. Rawlings*, 358 S.C. 28, 34, 594 S.E.2d 845, 848 (2004) (same); *NationsBank of S.C. v. Greenwood*, 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct. App. 1996) (stating a case involving the construction of a will is an action at law). Respondent concurs with the "action at law" characterization. Moreover, we are presented with a factual finding—breach of fiduciary duty—in an action at law. As such, we are constrained by the "any evidence" standard of review. *See, e.g.*, *In re Howard*, 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993) ("If the proceeding in the probate court is in the nature of an action at law, [an appellate] court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them."); *In re Estate of Hicks*, 284 S.C. 462, 464, 327 S.E.2d 345, 347 (1985) (reviewing the record to determine "whether there is any evidence which reasonably supports the factual findings of the judge" (citation omitted)).

The majority counters that, despite the parties' characterization of the action, this is really an action in equity. As for the newly-asserted de novo standard of review, the majority cites to *Verenes v. Alvanos*, 387 S.C. 11, 690 S.E.2d 771 (2010). *Verenes* includes the familiar refrain that the characterization of an action as legal or equitable depends on the "main purpose" of the action. *Id.* at 16, 690 S.E.2d at 773 (citation omitted). *Verenes* dealt with the construction of a charitable trust. One party claimed the action was legal and requested a jury trial; the other party resisted the jury trial request on the basis that the main purpose of the action was equitable. The characterization of the action as legal or equitable was the disputed issue on appeal. This Court noted that "[t]rusts have long and broadly been a field for the jurisdiction of equity." *Id.* (quoting *Epworth Orphanage v. Long*, 199 S.C. 385, 389, 19 S.E.2d 481, 482 (1942)). The main purpose of the action was determined to be equitable because the plaintiff sought equitable relief in the form of restitution and disgorgement.

The majority finds the main purpose of this will contest is equitable because Respondent "wanted a share in a specific piece of property." An action involving the construction of a will frequently involves a hopeful beneficiary wanting a specific piece of property, which has never before caused the Court to view the

action as one in equity.  My view is in line with that of the parties and this Court's prior decisions—this is a legal action to construe a will.  Even the majority states the "touchstone of our analysis must begin with discerning the intention of the testatrix."  In sum, I reject the majority's effort to revise the prior proceedings and procedural history to avoid the mandated "any evidence" standard of review.  I choose to review the case on the basis of the question presented by Petitioners on which we granted certiorari—whether there is any evidence to sustain the probate court's finding that Petitioners breached their fiduciary duty to Respondent.

## B.

I turn now to the breach of fiduciary duty finding.  I disagree with the majority's contention that a factual finding of breach of fiduciary duty is not entitled to deference because that finding was infected by the probate court's error in not applying Article 10.6 of the Will to afford Petitioners broad authority to distribute the residuary estate.  While I agree with the majority that the probate court erred in refusing to apply Article 10.6 to the residuary estate, I view the finding of breach of fiduciary duty as a separate finding of fact that is entitled to deference.  In fact, the timing of the finding indicates it must have been separate from the probate court's analysis of the import of Article 10.6.  Specifically, the probate court made the breach of fiduciary duty finding in its original order, which the majority acknowledges did not mention Article 10 of the Will.  In fact, the error of law by the probate court with respect to Article 10.6 did not occur until its order denying Petitioners' motion to reconsider.  Thus, the probate court's finding of breach of fiduciary duty was unrelated to the error of law, for such error had not yet occurred.[10]

Contrary to the majority's assertion that all three lower courts committed this same error of law,[11] the circuit court undoubtably recognized that Article 10.6 of the

---

[10]  Indeed, the probate court correctly acknowledged at the hearing before it that Article 10.6 of the Will "gives [Petitioners] broad powers."  As Petitioners pointed out in their motion to reconsider, the probate court simply "disagree[d] that Petitioners[] ha[d] *the absolute discretion* in dividing the property of the [testatrix]."  (Emphasis added.)  The fallacy of Petitioners' argument lies in the fact that their authority remained subject to fiduciary considerations.

[11]  I believe the fact that the three lower courts and now this Court have differing interpretations of Article 10.6 further shows this case involves the construction of the Will, rather than being a sheer equitable action to receive a share of a particular

Will applied to the residuary estate. Indeed, the circuit court noted, "There can be no dispute that pursuant to the language of the 'Fiduciary Powers' section of the [W]ill that the [p]ersonal [r]epresentatives enjoy broad discretion in making distributions." Nonetheless, the circuit court found evidence supported the probate court's factual finding that Petitioners' proposed distribution violated their fiduciary duty to Respondent. As explained more fully below, I would agree with the circuit court (and the court of appeals) that evidence in the record supports the probate court's finding of breach of fiduciary duty.

### III.

Petitioners, as personal representatives of the estate, owed a fiduciary duty to Respondent as a beneficiary of the estate. *See* S.C. Code Ann. § 62-3-703(a) (2022) (stating "[a] personal representative is a fiduciary"); *see also Witherspoon v. Stogner*, 182 S.C. 413, 414, 189 S.E. 758, 759 (1937) ("That a fiduciary relationship exists between each . . . beneficiary of an estate and the [personal representative(s)] thereof is fundamental."); *Turpin v. Lowther*, 404 S.C. 581, 589, 745 S.E.2d 397, 401 (Ct. App. 2013) ("Pursuant to the probate code, a personal representative owes a fiduciary duty to all beneficiaries of the estate."); *Ex parte Wheeler v. Estate of Green*, 381 S.C. 548, 555, 673 S.E.2d 836, 840 (Ct. App. 2009) ("A personal representative is a fiduciary under this state's probate code."). "A fiduciary relationship exists when one reposes special confidence in another[] so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Ex parte Wheeler*, 381 S.C. at 555, 673 S.E.2d at 840 (quoting *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992)); *see also Duty*, *Black's Law Dictionary* (11th ed. 2019) (defining fiduciary duty as a "duty of utmost good faith, trust, confidence, and candor owed by a fiduciary . . . to the beneficiary"). Importantly, a personal representative must "use the authority conferred upon him . . . for the best interests of [the] successors to the estate." S.C. Code Ann. § 62-3-703(a); *see also Duty*, *Black's Law Dictionary* (stating a fiduciary owes "a duty to act with the highest degree of honesty and loyalty toward [the beneficiary] and in the best interests of the [beneficiary]").

---

piece of property, as the majority contends. *See NationsBank of S.C.*, 321 S.C. at 392, 468 S.E.2d at 662 ("This case involves the construction of a will which is an action at law.").

When a fiduciary is vested with authority to distribute assets of an estate, the fiduciary is required to exercise that discretion fairly.  34 C.J.S. *Executors and Administrators* § 651 n.2 (2009).  Moreover, it is well settled that "anyone acting in a fiduciary relationship shall not be permitted to make use of that relationship to benefit his own personal interests."  *Lesesne v. Lesesne*, 307 S.C. 67, 69, 413 S.E.2d 847, 848 (Ct. App. 1991).  "Courts of equity will scrutinize with the most zealous vigilance transactions between parties occupying confidential relations toward each other and particularly any transaction between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence."  *Walbeck v. I'On Co.*, 426 S.C. 494, 517, 827 S.E.2d 348, 360 (Ct. App. 2019) (internal alteration marks omitted) (citation omitted).

"If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust."  S.C. Code Ann. § 62-3-712 (2022).  "To remedy a breach of trust that has occurred *or may occur*, the court may: (1) compel the trustee to perform the trustee's duties; (2) enjoin the trustee from committing a breach of trust; . . . [or] (9) . . . impose . . . a constructive trust on trust property . . . ."  S.C. Code Ann. § 62-7-1001(b) (2022) (emphasis added).  Therefore, a beneficiary may seek relief for a breach of fiduciary duty that has not yet occurred but would result from a fiduciary's proposed distribution scheme.[12]

## A.

In my judgment, the majority opinion rests primarily on its view that the proposed distribution is stipulated to be of equal monetary value.  Granted, the parties' stipulation of equal monetary value has ostensible merit in the majority's quest to reverse the probate court's finding.  Nevertheless, we are not at liberty to decide the appeal on the basis of our view of the preponderance of the evidence and are constrained only to determine whether the probate court's finding of breach of fiduciary duty is supported by any evidence in the record.  Accordingly, I do not construe the concession regarding the value of each property to be dispositive.  Nor

---

[12]  In an attempt to justify its departure from the "any evidence" standard of review, the majority highlights the fact that the proposed distribution has not yet occurred.  As clearly stated in section 62-7-1001, Respondent need not wait to suffer damages to seek relief.

did the probate court.  Nor did the circuit court on appeal.  Nor did the court of appeals.

Moreover, I believe Petitioners conceded their proposed distribution was not truly equal.  Assuming the accuracy of Petitioners' purported "equal value" distribution of the residuary estate, I asked counsel at oral argument if Petitioners would agree to flip the proposed division and allow Respondent to receive outright the Lake Summit property.  Petitioners' counsel summarily (and understandably) rejected such a division.  Rather than justify his response with the so-called equal value of the distribution, counsel quickly transitioned to supporting Petitioners' preferred distribution with the mantra that awarding the Lake Summit property to Petitioners "honors the intent of the testatrix."  Justice James later sought clarification:

> Q: [Are you suggesting] the overarching intent of the testatrix was for [Petitioners] Kathleen and Jacquelin to get all of Lake Summit?
>
> Petitioners' Counsel: That is correct.

Petitioners' suggestion that they were merely carrying out the testatrix's intent in awarding themselves the Lake Summit property is specious.  As noted, the testatrix intended to devise the Lake Summit property to her sons, but that plan was defeated by the sons' looting of estate assets.  Moreover, Petitioners originally filed a proposal for distribution in the probate court in 2011, under which Petitioners and Respondent would all have received approximately equal shares of the Lake Summit property.  It is unclear from the record what changed in the interim, but Petitioners obviously had a change of heart.

Regardless, the claimed "equal value" argument could be dispositive under a de novo standard of review, if that were the Court's desired result.  But under an any evidence standard of review, we are not permitted to myopically focus on the evidence we find supports our desired outcome.  Admittedly, the claimed "equal value" argument is a factor to consider, but it is certainly not dispositive.  Beyond Petitioners' adamant refusal to flip the supposed equal distribution,[13] there are other

---

[13]  I point this out only to demonstrate that the supposedly equal distribution is not truly equal.  In no manner is this point intended to disparage Petitioners and their excellent counsel.  Like Petitioners, no reasonable person would agree to flip the patently inequitable proposed distribution and give Respondent both the Lake Summit property outright and a share of the other two properties.

considerations that illustrate the unequal and inequitable[14] nature of Petitioners' proposed distribution.

No one has challenged the obvious—the Lake Summit property is the prized asset. The entire dispute is, after all, about who gets the Lake Summit property. It is undisputed that the rental income from the Lake Summit property more than covers all expenses associated with the property. Conversely, it is uncontested that the Bailey's Island and Paradise Island properties are unimproved lots that produce no income and have upkeep expenses that exceed $25,000 annually. Based on Petitioners' distribution scheme, Respondent—who, according to the majority opinion, did not receive the $400,000 bequest[15]—is responsible for the lion's share of those expenses. Moreover, while Petitioners awarded themselves a property outright (the Lake Summit property), they did not reciprocate and similarly award Respondent any property outright. Petitioners ensured themselves an ownership interest in all the properties. Under these facts and circumstances, I have no hesitation in finding evidence in the record to support the breach of fiduciary duty finding and affirming the court of appeals on this issue. I find evidence supports the probate court's determination that Petitioners' fiduciary duty precluded them from using their position as personal representatives to benefit their own interests to the detriment of Respondent.

In sum, I would affirm the court of appeals as modified, and I thus concur in part and dissent in part.

---

[14]  Petitioners' brief acknowledges that "any Residuary Assets should pass in an equitable manner."

[15]  While there were apparently insufficient funds to pay Respondent her $400,000 bequest, each Petitioner requested over $130,000 in personal representative fees.